## Porter v. Commonwealth.

(Decided November 22, 1911.)

### Appeal from Fulton Circuit Court.

Murder—Indictment, Names of Witnesses to—Not Error to Refuse to Require Commonwealth to Introduce.—It was not error for the trial court to refuse to require the introduction by the Commonwealth, of two of the five eye witnesses to appellant's shooting of deceased, although their names were on the indictment as witnesses, and their testimony had been heard by the grand jury. Section 120, Criminal Code, requires that the names of all witnesses examined by the grand jury, must be written at the foot of or on the indictment, but does not compel the Commonwealth's Attorney to introduce, on the trial of defendant before a petit jury, all or any of the witnesses whose names appear on the indictment. It was in the discretion of the Commonwealth's Attorney to decline to introduce the two witnesses referred to and we will not inquire into his motive for not introducing them. In any event appellant was not prejudiced by his not doing so, as he had the right to introduce the two witnesses in his behalf, and in fact did introduce them.

SAMUEL H. CROSSLAND for appellant.

JAMES BREATHITT, Attorney General and CHAS. H. MORRIS for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

Appellant was, by a verdict of a jury, in the court below, convicted of voluntary manslaughter, his punishment being fixed by judgment of the court at indeterminate confinement in the penitentiary not less than two, nor more than twenty-one years.

The indictment under which appellant was tried charged him with the murder of his step-father, Jake Wright. His motion for a new trial was bottomed on the grounds: 1st, That the verdict was against the law and the evidence; 2nd, that the court failed to properly instruct the jury; 3rd, That the court erred in refusing to require the Commonwealth's Attorney to introduce in its behalf on the trial, two of the eye witnesses to the homicide, whose names were on the indictment. 4th, That the Commonwealth's Attorney was guilty of misconduct, in the use of improper remarks in the closing argument to the jury. 5th, That the court erred in permitting incompetent evidence to be considered by the jury.

The facts furnished by the evidence were, in substance, that appellant upon returning to his home from a squirrel hunt, in company with his uncle, found his mother and deceased, her husband, engaged in an altercation in the yard of the latter's residence. Appellant was carrying a single barrel, breech loading shotgun, and with this gun he shot deceased after getting within a few feet of the yard fence which separated them. The load entered the neck of deceased, causing him to fall against the fence in such a manner as to partly conceal his head under a plank thereof. After deceased fell appellant inserted a fresh cartridge in the gun, and, reaching over the fence with the weapon, took a second shot at him, but without effect, the load missing his body and entering the ground. The first shot proved fatal, however, as the death of deceased occurred less than an hour after the wound in his neck was received.

Deceased was somewhat intoxicated, and it was appellant's contention, as shown by his testimony, that deceased was striking and kicking his wife, appellant's mother, and threatening to kill her; and that he (appellant) shot him in her necessary defense, because he feared, and had reasonable grounds to believe, that she was at the time about to be killed, or receive great bodily harm at the hands of deceased. Appellant's

mother in large measure corroborated his testimony, but admitted she told appellant, when he presented the gun at deceased, not to shoot him. Webb, appellant's uncle, who was present and saw the shooting, failed to testify that deceased struck, kicked, or threatened his wife. He testified, however, that he held his wife by the arm and cursed her and that they were quarreling.

On the other hand, Anderson, a witness for the Commonwealth, who lived very near deceased and was at the latter's house when he was shot, testified that the quarrel between the husband and wife began in the house; that he was trying to prevent his wife from going out to feed the stock and she was insisting upon doing so; that they went out into the yard continuing the quarrel and each cursing the other; that deceased during the quarrel several times took his wife by the arm in attempting to detain and keep her with him; but he saw no blows, or kicks inflicted by him upon his wife, nor did he hear him threaten her with death or bodily harm.

Anderson's wife, who saw and heard from her own residence, what was done and said by deceased and wife while they were on the porch and in the yard, corroborated her husband's testimony, but in addition, saw deceased hold and slap his wife one or more times during the altercation, and the wife striking or otherwise forcibly resisting him. Both heard each of them cursing the other. Anderson and his wife also saw appellant appear with the gun, saw the shooting and heard his mother before the first shot tell him not to shoot. A son of deceased by a previous marriage, who saw the altercation between deceased and his wife and also the shooting, testified to the facts as related by Anderson and wife, except that he did not agree with the latter as as to deceased slapping his wife.

It is apparent that while the testimony of appellant and his mother conduced to prove the shooting of deceased justifiable, because done in her necessary defense, that of all the other witnesses conduced to show it was on the contrary, unnecessary and inexcusable. Although the evidence failed to show reasonable grounds for belief on appellant's part that deceased was about to kill his mother or inflict upon her bodily harm, yet there was much in what it showed of deceased's mistreatment of his wife calculated to provoke him to sudden anger and resentment, but the provocation, instead of excusing the homicide, only served, in the opinion of the jury,

to reduce it from murder to voluntary manslaughter, as authorized by the instructions of the court; hence the verdict finding him guilty of the latter crime. As the precipitancy of the act of the shooting, without inquiry on appellant's part as to the cause of the altercation between the husband and wife or effort by him to stop it peaceably, together with his deliberation in reloading the gun and taking the second shot at his already mortally wounded victim, might have been treated by the jury as sufficient to authorize a verdict for murder, it may well be questioned whether appellant's dissatisfaction with the verdict returned, is well founded.

Appellant introduced as a witness a physician, who testified that something near a year before the homicide, appellant was afflicted with epilepsy which caused him, for a while, to have as many as three or four fits a day, but that under treatment his health had so improved that at the time of the homicide the fits were infrequent. The witness, with apparent hesitancy, gave it as his opinion that appellant's mind had been so impaired by the disease in question as to render him incapable of knowing right from wrong, or of controlling his will power; but the witness was unable to instance an act or deed of appellant's which indicated such incapacity of mind or absence of will power. Appellant's mother did not testify as to this state of mind, but did testify as to his having been subject to fits, but there was no other witness as to that matter introduced in his behalf. The Commonwealth, however, introduced several of appellant's neighbors, some of whom had known him from infancy, but none of whom had seen anything in his conduct or speech that indicated a want of mental capacity or will power. The evidence as to unsoundness of mind was not convincing to the jury, and a careful reading of it will create no surprise that it was not. Obviously, no grounds exist for appellant's contention that the verdict is unsupported by the evidence, or that it is contrary to law. Equally unauthorized by the record is his complaint of the instructions, for they correctly state the entire law of the case. By them the jury were told in what state of case they would be authorized to find appellant guilty of murder or voluntary manslaughter, and what punishment might be inflicted by them for the first-named crime; what would justify the appellant's killing of deceased in defense of his mother's life, or person, and what would not justify the killing on that ground; also under what

circumstances the want of mental capacity and will power, if either was shown by the evidence to be lacking in appellant, would excuse the killing; while in and through the instructions, separately and as a whole, ran the admonition to the jury to allow the appellant the benefit of every reasonable doubt arising from the evidence, in determining his guilt or innocence, or, if they found him guilty, in determining the degree of his offense.

Appellant's third contention raises a question which this court has never, until now, been asked to consider. The contention is as to the refusal of the trial court to require the introduction by the Commonwealth of two of the five eye witnesses to the homicide. Three of the persons who saw it, viz: Anderson and wife, and a young son of the deceased, were introduced as witnesses in behalf of the Commonwealth, but it declined to introduce the mother and uncle of appellant, who also saw the killing, although their names appeared on the back of the indictment as witnesses for the Commonwealth, as did those of the three witnesses named and counsel for appellant insisted upon the Commonwealth's introducing them.

While section 120, Criminal Code, requires that "when an indictment is found, the names of all the witnesses who were examined (by the grand jury) must be written at the foot of, or on the indictment," this provision does not compel the Commonwealth's Attorney to introduce on the trial of the defendant before a petit jury, all or any of the witnesses, whose names may be on the indictment. The absence from the indictment of the names of the witnesses examined by the grand jury merely affords a ground for quashing the indictment, if a motion to that effect and for that reason, be made by the defendant in proper time as provided by section 157, Criminal Code. (Sutton v. Commonwealth, 97 Ky., 308.) It has been held, however, that this rule will not be applied, when it appears that the name of the witness not on the indictment was omitted by oversight, or the witness is not material. (Commonwealth v. Glass, 107 Ky., 160), and we have repeatedly held that the rule requiring the names of witnesses examined before the grand jury to be entered on the indictment, does not prevent the Commonwealth from introducing on the trial witnesses whose names are not on the indictment or in a subpoena for the Commonwealth; and this right may be exercised by the Commonwealth, whether some witnesses

were or were not examined by the grand jury. Underwood v. Commonwealth, 27 R., 8.

It was in the discretion of the Commonwealth's Attorney to decline to introduce the two witnesses referred to, and this being true, we will not inquire into his motive for not introducing them. In any event, appellant was not prejudiced by the refusal of the Commonwealth's Attorney to introduce them as they were afterwards introduced by him, with previous knowledge on his part that they were eye witnesses to the homicide, for this fact was urged as the basis of his motion to require their introduction by the Commonwealth. Manifestly, the refusal of the court to require the introduction of these two witnesses by the Commonwealth was not error.

We are also unable to see that the substantial rights of the appellant were prejudiced by the refusal of the circuit court to grant him a new trial, on account of the alleged improper remarks of the Commonwealth's Attorney in argument to the jury, set forth in his fourth complaint. That officer had the right to argue, as he did, in substance, that the claim of insanity interposed by appellant was no defense and that there was nothing the matter with his mind, for the proof upon which his defense of insanity rested, made such an argument legitimate; but he should not have said this defense was manufactured by appellant's counsel. Nothing in the record authorized such a reflection upon counsel, and the court, when appealed to, should have rebuked the Commonwealth's Attorney and told the jury to disregard the statement. We are, however, indisposed to hold that the failure of the court to do so is reversible error. Jurors are intelligent enough to know that attorneys, in the heat of argument, sometimes make statements unwarranted by the evidence, of which they usually have a good recollection; and this case, having in all other respects been fairly tried, we are unconvinced that the one improper, and doubtless inadvertent remark of the Commonwealth's Attorney, had any material effect in influencing the verdict of the jury.

Appellant's final complaint as to the admission of incompetent evidence on the trial, seems to be unsupported by the record. Our attention has not been called to the alleged incompetent evidence by counsel, nor has our reading of the record disclosed it. We have, it is true, discovered here and there an incompetent state-

ment, but nothing of a material or prejudicial character.

No reversible error appearing in the record, the judgment is affirmed.