### Greer v. Commonwealth.

(Decided April 29, 1915.)

## Appeal from McCracken Circuit Court.

1. Criminal Law—Venue—Change of—Discretion of Trial Court.— A reversal for denial of an application for a change of venue will only be awarded where there has been an abuse of discretion by the trial court.

2. Homicide—Indictment.—The omission of the word "unlawfully" and of the phrase "not in his necessary self-defense" from an indictment for wilful murder, is not ground for arrest of judgment; nor is such indictment bad on demurrer.

3. Criminal Law—Motion in Arrest of Judgment—Grounds.—Although the alleged offense may be defectively stated in the indictment so as to render it bad on demurrer, still if conceding the facts stated in the indictment to be true, a public offense has been committed by the defendant, within the jurisdiction of the court, a motion in arrest of judgment will not avail; the defect is waived by failure to demur.

4. Homicide—Trial—Instructions—Self Defense—Slayer Attacked on His Own Premises.—Under the circumstances here shown it was not prejudicial error to fail to extend the instruction on self defense by stating that defendant was under no duty to retreat when attacked.

HENDRICK & NICHOLS, S. H. CROSSLAND and JACK E. FISHER for appellant.

JOHN G. LOVETT, W. A. MIDDLETON, HAL S. CORBETT, JAMES GARNETT, Attorney General, and R. T. CALDWELL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE HANNAH—Affirming.

Appellant, J. K. Greer, an insurance agent, sixty years of age, on July 2, 1914, in his office in Paducah, shot and killed Charley Troutman. He was tried and convicted of voluntary manslaughter, his punishment being fixed at an indeterminate sentence of from seventeen to twenty-one years. He appeals.

Miss Pernie Lee Shemwell, who was the only person in the office at the time of the killing, other than the participants, testified that she had been Greer's stenographer and office assistant for some nine years; that an engagement of marriage had existed between herself and Troutman for several months; that Greer had remonstrated with her in regard to her association with

Troutman; that on the day of the killing Troutman was in Greer's office, and that he and Greer conversed for some time and only in a friendly manner; that Greer then left the room, and returned shortly thereafter armed with a revolver, and, without any warning other than ''Charley, I am going to shoot you,'' shot and killed Troutman while he was sitting in a chair with his back to the door through which Greer entered.

Appellant's version of the matter was that he had incurred Troutman's enmity on account of Miss Shemwell; that Troutman had on several occasions before the killing abused him and threatened to take his life; that on the day in question, when he entered his office, Troutman was there, and began abusing and cursing him, and finally drew a knife upon him; that he went out of the office, saying he must use the telephone in an adjoining office; that he went into the office of one Lassiter adjoining his own, and informed Lassiter of the manner in which Troutman was acting, and asked his advice; that Lassiter told him he would go in there and take a chair and ring it over Troutman's head; that after waiting until he thought Troutman had left, he returned to his office, and found Troutman still there; that he sat at his desk and began looking over some papers, when Troutman walked up with a knife in his hand and began cursing him, saying that unless he would promise to retain Miss Shemwell in his employ until November first, and pay her fifteen dollars per week, he would cut defendant's throat; that just then a Mr. Gleaves opened the door of the office, and defendant stepped out into the hall with him, explaining that Miss Shemwell's admirer was in the office acting badly; that after conversing with Gleaves a moment he again returned to his office, when Troutman started at him with a knife, saying he had come there to cut defendant's throat, and was going to do it, whereupon defendant shot him.

Defendant sought to explain the fact that Troutman was shot immediately above the left ear, the bullet emerging at the corner of the right eye, by saying that Troutman ''played a naval stunt; kind of squatted and ducked'' just as he fired. On the other hand, it was shown that the chair on which Troutman had been sitting was found to have blood upon it; and that persons who rushed to the scene of the killing found no knife or other weapon on or about Troutman's person.

1.   Appellant first contends that the trial court erred in denying his application for a change of venue.

It appears from the record that immediately after the killing of Troutman there was considerable indignation in respect thereto; and one or perhaps more meetings were held and a fund collected to aid in the prosecution of Greer.

Upon the trial of the application for the change of venue, defendant introduced fifteen witnesses, of whom ten testified concerning the state of public sentiment, and only two of these (one of whom was a son-in-law of defendant) stated that it was such that defendant could not obtain a fair trial in McCracken County, the other eight testifying that he could.

The Commonwealth introduced nine witnesses, all of whom stated that no public sentiment existed which would preclude a fair trial of the case, some of these being witnesses from various parts of the county.

We may say that upon an application for a change of venue, proof of the state of public sentiment in one locality only is insufficient to sustain the burden of proof which is upon the applicant. If no witness be obtainable who is acquainted with the state of public sentiment throughout the county, then witnesses from various parts of the county should be produced, who are acquainted with the state of public sentiment in their respective neighborhoods.

It quite frequently happens, where a crime is committed in a city like Paducah, and wide publicity is given to the details thereof by newspaper publications, and the greater opportunity existing in a thickly populated community for mutual discussion of the matter, that there is more or less public sentiment for or against the accused, and that it would be quite difficult, on account of such sentiment, to obtain in the city itself persons qualified to act as jurors upon the trial of the defendant, when at the same time no such difficulty would be encountered in other parts of the county, and no such state of public sentiment exists in the city as would preclude a fair trial from being accorded therein.

In this case the trial court tested and exhausted the regular panel of jurors; and then, without drawing from the wheel, as might have been done, tested a number of persons summoned as jurors from the by-standers, most

of whom were doubtless residents of Paducah and more or less conversant with the details of the killing.

The court then entered an order reciting that, owing to the publicity that had been given to the details of the matter under investigation in McCracken County, the court was of the opinion that a jury could not be secured in McCracken County, and directing the sheriff to obtain jurors from the adjoining county of Marshall. which was done.

Appellant urges that the language of this order is sufficient to show that a fair trial could not be had in the county. Had the order recited that because of the prejudice against defendant in McCracken County a jury was ordered from Marshall County, appellant's contention might have some weight; but it does not so state. It is only susceptible of the construction that the court was of the opinion that the killing had been more or less discussed throughout the county, and that those subject to jury service would be subject to challenge on account of having formed and expressed opinions in the matter.

On the record before us the trial court would have been justified in trying the defendant before a McCracken County jury unless a further testing had established the fact that qualified jurors could not be obtained therein; and certainly no such state of public sentiment was shown as would operate to prevent defendant's obtaining a fair trial before a jury summoned from another county.

We are satisfied that there was no abuse of discretion upon the part of the trial court in this matter; and it is well settled that a reversal will be granted for the denial of an application for a change of venue only where there has been such abuse of discretion. Stroud v. Commonwealth, 160 Ky., 503; Mansfield v. Commonwealth, 163 Ky., 488; Heck v. Commonwealth, 163 Ky., 518.

2. Appellant insists, however, that it was error to summon the jury from Marshall County. It was charged in the petition for a change of venue that Marshall County was the home of the prosecuting attorney and the former home of Miss Pernie Lee Shemwell; but there is no proof in the record that the state of public sentiment in that county was such that defendant could not

obtain a fair trial therein, and the objection is not well taken.

3. Appellant further insists that the indictment was insufficient. This objection was not raised by demurrer, but by a motion in arrest of judgment; and such motion will prevail only when the indictment attacked fails to state a public offense, within the jurisdiction of the court. Although the alleged offense may be so defectively stated in the indictment as to render it bad on demurrer, still, if conceding the facts stated in the indictment to be true, a public offense has been committed by the defendant, within the jurisdiction of the court, the motion in arrest of judgment will not avail to reach the defect; it is waived by failure to demur. Tully v. Commonwealth, 11 Bush, 154; Hodgins v. Commonwealth, 11 R., 226; Commonwealth v. Bowman, 96 Ky., 42, 27 S. W., 816, 16 R., 222; Justice v. Commonwealth, 20 R., 363, 46 S. W., 499; Parrott v. Commonwealth, 20 R., 761, 47 S. W., 452.

The appellant's criticism of the indictment is that, although it charges that he "did feloniously, wilfully and with malice aforethought, kill, murder and slay Charley Troutman, etc.," it fails to charge that he did so "unlawfully." But without the word "unlawfully" the indictment charges the defendant with the commission of a public offense. Lightfoot v. Commonwealth, 80 Ky., 516.

In Overstreet v. Commonwealth, 147 Ky., 471, 144 S. W., 751, the court had under consideration the sufficiency of an indictment on demurrer. The indictment failed to contain the word "unlawfully," and was in other respects more objectionable than the one here under consideration.

In that case the court said: "An indictment may contain more than is necessary, or it may be phrased in inapt words, or the sentence may be ungrammatically or awkwardly expressed, or the spelling not conform to approved standards, but if, when considered as a whole, the charge is stated with sufficient clearness and certainty to enable a person of common understanding to know what he is charged with, and to enable the court to pronounce judgment, no error in form or expression will make the indictment bad."

As to the objection that the indictment failed to charge that the killing was done "not in his necessary

self-defense'' there is no authority for the contention that the indictment is fatally defective upon this account.

In Miller v. Commonwealth, 163 Ky., 246, this court held that it was unnecessary to use this phrase in the instructions on wilful murder and voluntary manslaughter; and the same reasoning is applicable to the use of language negativing innocence, in the indictment. See 22 Cyc., 305.

4. The instruction on self-defense is complained of. It was as follows:

''Although you may believe from the evidence beyond a reasonable doubt that the defendant, J. K. Greer, at the time and place stated to you in the other instructions herein, did shoot and wound Charley Troutman with a pistol loaded with powder and leaden balls, or other hard substances, yet the court further instructs you that if you shall further believe from the evidence at the time he did so he had reasonable grounds to believe, and did believe, as it then appeared to him, that he was then and there in danger of losing his life or suffering great bodily harm at the hands of said Charley Troutman, and as it then appeared to him there was no other safe means or apparently safe means of avoiding said danger, either real or apparent, except to shoot the said Charley Troutman, then such shooting and wounding would be in his necessary self-defense; and if you shall so believe from the evidence in this case, then you will find the defendant not guilty on the grounds of self-defense.''

Appellant contends that the utmost limit to which the defendant might go, under the instruction, was to shoot and wound the deceased, not to kill him; and that it is, therefore, erroneous.

But we do not so understand the instruction. It directs the jury to acquit if they believe the defendant believed it was necessary to shoot the deceased, whether he believed it was necessary to kill him or not. The instruction would have been complete in this respect had it omitted the words in the latter part thereof, ''then such shooting and wounding would be in his necessary self-defense, and if you so believe from the evidence in this case.'' This was mere surplusage. But the instruction is susceptible of no other construction than a direction to the jury to find the defendant not guilty if they

should believe from the evidence that the killing was done under the circumstances therein recited.

5. The instruction on self-defense required, in order to render the killing of Troutman excusable, that there should have been no other safe or apparently safe means of avoiding the danger at his hands. Appellant contends that the jury may have understood by this that if he could have averted the danger by leaving the office it was his duty to do so; and that for this reason the instruction is erroneous and prejudicial, because, as appellant claims, being on his own premises he was under no duty to retreat when attacked.

The former rule was that the person assailed, in order that the killing of his assailant might be excusable, must have availed himself of the opportunity to escape if such there was, and have slain his assailant only as a last resort; but the modern rule in Kentucky is that whether he should stand his ground or give back is a question for the jury to determine under an instruction declaring apparent necessity a legal excuse for the homicide and the measure and only test of his right to slay his assailant.

Nor do we find any good reason why any distinction should be made between homicides occurring on the premises of the slayer under the circumstances here shown, and those occurring elsewhere, especially where the assailant commits no trespass in going or remaining thereon.

Under some circumstances—and we have so held—it would be prejudicial to refuse to extend the instruction on self-defense in the manner here suggested by appellant; but we will not say that such is the state of case here.

A record is presented here in which if the testimony of the appellant himself be accepted as true, he was entitled to acquittal upon the grounds of apparent necessity, while if the testimony of the only other eye-witness of the crime be taken as the true version of the tragedy, appellant was guilty of murder.

Appellant in this court and in the trial court has had the benefit of the earnest efforts of distinguished and able counsel. The jury has chosen to accept as true the testimony of the prosecuting witness; and the record is free from errors prejudicial to his substantial rights. The judgment of conviction must, therefore, stand.

Affirmed.