## Wiley v. Commonwealth.

(Decided April 19, 1929.)

64

CROSSLAND & CROSSLAND for appellant.

J. W. CAMMACK, Attorney General, and JAMES M. GILBERT, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

Appellant, Fannie Wiley, indicted for murder, was convicted of manslaughter, and her punishment fixed at confinement in the penitentiary for a period of ten years. She seeks a reversal of the judgment because, as she claims: (1) The court erred in failing to instruct the jury on the law of involuntary manslaughter; (2) she was surprised by the introduction of a witness for the commonwealth whose name did not appear on the indictment; and (3) the attorney for the commonwealth was guilty of misconduct prejudicial to her substantial rights.

The appellant, a negro woman, and the deceased, Jeff Larkins, a negro man, had been living together in Paducah, Ky., for about a year. On the day preceding the killing, which occurred on April 10, 1928, they quarreled over money matters, but appellant claimed this difficulty had been adjusted, and that at the time the shooting occurred they were on friendly terms. During the afternoon of April 10, 1928, deceased went to the home of a neighbor. Appellant followed him there, and they returned to their home. Clara Lucas, who lived in the house adjoining the house occupied by appellant and Larkins, testified that Larkins stopped on the porch, and

the appellant, who was angry, walked back and forth for 15 or 20 minutes, cursing and abusing him, and with her hand in a pocket of her coat and on a pistol, part of which was exposed. Among other statements made by appellant, the witness heard her say: "A s—— of a b—— like you ought to be killed." The deceased did not appear to be alarmed by the threats of appellant and finally walked in the house. Appellant went to the rear of the house and entered, and a few minutes later the report of a gun was heard, immediately after which the deceased came out of the house and fell on the porch. His shirt was on fire, indicating that the gun had been fired at close range. D. S. Ransaw, a negro preacher, testified that he passed the house a few minutes before the killing, and heard the appellant say to the deceased: "I am going to kill you, you G—— d—— black s—— of a b——."

Appellant claimed that the killing occurred under the following circumstances: She and the deceased agreed to go walking; he observed her pistol lying in a drawer, picked it up, and said, "I am going to carry this pistol with me." He was somewhat under the influence of liquor, and, knowing that he was reckless with firearms when drinking, she endeavored to persuade him to leave the pistol in the house. She attempted to take the pistol from him, and during the scuffle that followed it was accidentally discharged.

The trial court gave instructions on murder, voluntary manslaughter, and accidental killing. The sole complaint of the instructions is the failure of the court to instruct on involuntary manslaughter, and counsel for appellant in their brief cite numerous cases in support of their contention that such an instruction should have been given. However, an examination of the cases cited discloses in each instance that the killing occurred as the result of the reckless use of firearms, or of the commission of some other unlawful act. Involuntary manslaughter has been defined as "the killing of another in doing some unlawful act, but without an intention to kill." Trimble v. Commonwealth, 78 Ky. 176; Lewis v. Commonwealth, 140 Ky. 652, 131 S. W. 517; Maulding v. Commonwealth, 172 Ky. 370, 189 S. W. 251; Commonwealth v. Owens, 198 Ky. 656, 249 S. W. 792.

The appellant was the only witness who testified as to what occurred immediately before and at the time the pistol was discharged. According to her testimony, she was engaged in no unlawful act at the time; she was merely attempting in a friendly way to prevent the deceased from carrying the pistol when they left the house; she was not reckless or careless in her effort to take it from his possession. It was her contention that the killing was purely an accident, without any culpability on her part, and her theory of the case was presented to the jury by a proper instruction. Under the circumstances, no instruction on involuntary manslaughter was authorized.

During the trial the commonwealth called as a witness Rev. D. S. Ransaw, who testified that he heard appellant curse and threaten the deceased a few minutes before the killing. The witness had not appeared before the grand jury or at the examining trial, and at the conclusion of his testimony the appellant filed her affidavit to the effect that she was surprised by the testimony of the witness, and asked that the jury be discharged and the case continued.

We know of no rule that prevents the introduction of witnesses by the commonwealth who did not appear before the grand jury, or whose names are not upon the indictment although the defendant may have no knowledge or information concerning them and their evidence before they are introduced. Appellant relies upon the cases of Underwood v. Commonwealth, 119 Ky. 384, 84 S. W. 312, 27 Ky. Law Rep. 8, and Thompkins v. Commonwealth, 90 S. W. 221, 28 Ky. Law Rep. 642, in support of her contention that the jury should have been discharged and the case continued, upon the filing of her affidavit that she was surprised by the testimony of the witness Ransaw, and that his testimony was not true. The cases relied upon announce no such rule. On the contrary, in the Underwood case it was said:

> "Section 120 of the Criminal Code of Practice does require the names of the witnesses who testify before the grand jury to be placed on the indictment, but we know of no rule, and the learned counsel for appellant has cited us to no authority, holding that the commonwealth may not call such additional witnesses as may be able to furnish evidence material to the prosecution."

In Porter v. Commonwealth, 145 Ky. 548, 140 S. W. 643, this court said:

"We have repeatedly held that the rule requiring the names of witnesses examined before the grand jury to be entered on the indictment does not prevent the commonwealth from introducing on the trial witnesses whose names are not on the indictment or in a subpoena for the commonwealth; and this right may be exercised by the commonwealth, whether some witnesses were or were not examined by the grand jury."

Also see Dowell v. Commonwealth, 108 S. W. 847, 32 Ky. Law Rep. 1344; Young v. Commonwealth, 141 Ky. 708, 133 S. W. 791; Hendrickson v. Commonwealth, 146 Ky. 742, 143 S. W. 433.

Furthermore, the record discloses that the case was called for trial on the fifth day of the September, 1928, term of the McCracken circuit court. Ransaw was present and his name was called as a witness for the commonwealth, and his name was on that day written on the indictment by the attorney for the commonwealth. The case was continued until the tenth day of the term, and appellant had ample time to ascertain the nature of Ransaw's testimony.

Appellant finally complains of alleged misconduct on the part of the attorney for the commonwealth. While appellant was upon the stand, she was asked this question: "This is not the first negro that you have killed?" An objection to this question was sustained, and it was not answered. While H. H. Lovett, a character witness, was upon the stand, he was asked the following question: "I will ask you if it is not generally known that she is a common strumpet?"—referring to appellant. An objection was likewise sustained to this question. These questions were improper, and should not have been asked by the attorney for the commonwealth; but the court properly sustained an objection to each of them, and in view of all the facts and circumstances we are of opinion that they were not prejudicial to appellant's substantial rights.

Some complaint is made because the witness Clara Lucas changed her testimony in certain respects from the testimony given by her at the examining trial. The jury, however, are the judges of the credibility of the

witnesses, and it was for them to determine whether or not the witness was testifying to the truth on the trial.

We find no error prejudicial to the appellant's substantial rights, and the judgment is affirmed.