## Watts v. Commonwealth.

June 11, 1948.

As Modified on Denial of Rehearing

October 12, 1948.

M. C. Redwine for appellant.

A. E. Funk, Attorney General, and William F. Simpson, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

Roy Watts shot and killed John Anderson on Main Street in Winchester, Clark County, Kentucky, on the night of December 1, 1945. He was indicted for murder, and after three mistrials was convicted of the crime of voluntary manslaughter by a jury selected from Fayette County, and his punishment was fixed at four years' imprisonment in the state penitentiary.

The evidence for the Commonwealth shows that ill feeling existed between Watts and Anderson. The shooting occurred in front of the Newberry store on Main Street in Winchester about 8 p. m. after the parties had met and had a verbal altercation. Appellant was accompanied by his brother, Wilmot Watts. There were several eyewitnesses, and there is little dispute as to what occurred. Ollie Gibson testified that he was within six or eight feet of the parties, and he described the transaction as follows: "Mr. Anderson said, 'boys I don't want any trouble and there are two of you.' And Wilmot stepped back and said, 'I am out of it you and

him settle it.' Roy said to Mr. Anderson, 'you start something.' He said, 'no, you start it.' He said, 'no, you start it.' Mr. Anderson said, 'you are a God damned liar, I haven't * * *' and Roy Watts walked back and jerked his shirt open. Mr. Anderson started walking away from him. He said, 'God damn you, don't call me no God damned son-of-bitch.' And he pulled his gun down, took his hand off of it pulled it back down. He shot him in the shoulder and he lent over on the mail box. He shot him four more times. He was leaning on the mail box and he went on down on his knees.

"Q. At the time there did John Anderson have any gun? A. I never saw any.

"Q. He have one in his hands? A. No, sir.

"Q. Had he had one in his hands could you have seen it? A. Yes, sir."

Charles Todd was standing in the door to the Newberry store. He testified: "The first thing I heard said, Watts said to Anderson, said 'I heard you were going to run us out of town tonight.' Anderson said, 'no, nothing like that, get on up the street.' And Watts said, 'no, I am not going anywhere, if anybody leaves town you can leave town.' He said, 'no, I am not going any place, I got as much right here as anybody else.' Watts said, 'well, we will settle it right now.' Anderson said, 'well, settle it.' Watts said, 'we will sette it.' Watts said, 'you said I was a coward * * *' Watts said, 'I don't take that off of nobody.' and pulled his gun and started shooting."

On cross-examination he said: "Well, he shot him when he called him a son-of-bitch, that is when he began shooting him."

Mrs. M. B. Fox started out of the Newberry store and heard part of the difficulty. She testified:

"Q. Which door were you in, North or South. A. The South door.

"Q. Did you see Mr. Chas. Todd there? A. I did.

"Q. What did you hear, if anything, between Watts and Anderson? A. I didn't hear Roy Watts say anything.

"Q. You hear anybody say anything there? A. Wilmot Watts, Roy's brother was there and he said 'I will step back out of the way.' And he did step back away from him.

"Q. You know why he said that. Had you heard anything before? A. No, I didn't.

"Q. Then which way did Wilmot step? A. North from where they were standing.

"Q. Then what happened? A. I heard Anderson say, 'I never have run.'

"Q. Then what happened? A. At that time I turned and started back in Newberry's store and when I did I heard a shot. I turned and looked back and saw Roy Watts—Anderson and Watts were facing each other when I first saw them but when I looked back after the first shot was fired Anderson had his back turned to Watts and Watts was firing the gun.

"Q. How many shots were fired after you saw his back turned? A. I didn't count the shots but I think four or five."

Tom Gravitt, Jr., heard appellant say just after the shooting: " 'He called me a God-damned son-of-bitch and no man can call me that and get by with it, and there he lies, I am sorry.' "

Edward Lawrence was across the street and heard the shots. He ran to the scene, saw appellant with a pistol in his hand, and heard him say: " 'There he lays, he called me a son-of-bitch, and there he lays. Nobody can call me a son-of-bitch and live.' "

Three other witnesses heard appellant make the same statement. All of the witnesses agree that Anderson was standing on the sidewalk with his hands in his overcoat pockets. Appellant claimed that Anderson made a motion as if to draw a pistol, but no pistol was found on or about his body. Ernest Lane, a witness for the Commonwealth, testified that he assisted two police officers when Anderson was placed in an ambulance; that he rode with them to the hospital, and was present when Anderson's clothes were examined. The only weapon found was a small pocketknife. Gracie Puckett, a witness for appellant, testified to statements

made by Lane at her home which, if true, indicated that Lane had taken a pistol from the dead man, but she was thoroughly impeached. Anderson was shot six times. One bullet struck his left arm and five bullets entered his back. Ben Bartlett, the coroner, stated that any of the wounds in the back would have caused death.

Appellant's chief complaint is of the court's action in sending to Fayette County for a jury. After three Clark County juries had failed to agree on a verdict, the following agreed order was entered on April 24, 1947:

"It is agreed by and between the Commonwealth of the one part and the defendant, Roy Watts, personally, and by his counsel, that it is practically impossible to secure a jury in Clark County to try this case, whereby the Commonwealth and the defendant could receive a fair and impartial trial.

"Therefore, it is agreed by and between the parties that the Judge of this Court may send to another county of the Commonwealth of Kentucky and have a number of house keepers summoned from another county to try this case and that the defendant nor the Commonwealth will not file any exceptions or take any exceptions thereto at that time or any time thereafter."

On the defendant's motion the case was continued to September 8, 1947, the first day of the September term of the Clark Circuit Court, when the court entered an order directing the sheriff of Clark County to proceed to Fayette County and summon 100 citizens to appear in the Clark Circuit Court at 9 o'clock on the following morning to serve as jurors in the case. The defendant objected and excepted. He now argues that it was error for the court to send to Fayette County for a jury instead of to Estill County to which no objection was made. Both Fayette County and Estill County adjoin Clark County. Section 194 of the Criminal Code of Practice provides that if the trial judge is satisfied that it will be impracticable to obtain a jury free of bias in the county wherein the prosecution is pending, he shall be authorized to order the sheriff to summon a sufficient number of qualified jurors from some adjoining county in which the judge shall believe there is the greatest probability of obtaining impartial jurors. The summoning of a special venire from another county under

section 194 of the Criminal Code of Practice rests largely in the discretion of the trial court, and the exercise of the court's discretion in this respect will not be interfered with in the absence of an abuse of power. Fannon v. Commonwealth, 295 Ky. 817, 175 S. W. 2d 531; Gross v. Commonwealth, 294 Ky. 492, 172 S. W. 2d 78; Howard v. Commonwealth, 282 Ky. 663, 139 S. W. 2d 742. The discretion extends not only to the determination of the necessity for a jury from another county, but also to the determination of the county from which the jury shall be selected. Patterson v. Commonwealth, 256 Ky. 745, 77 S. W. 2d 14; Greer v. Commonwealth, 164 Ky. 396, 175 S. W. 665. Here, the defendant objected to the selection of a jury from Fayette County, but no valid reason for the objection was given. Under the facts, there was no abuse of discretion by the trial judge.

Appellant complains because the court excused four members of the special panel. Two asked to be excused for business reasons, and two stated on their voir dire examination that they had formed an opinion as to defendant's guilt or innocence but could lay it aside. There was no abuse of the trial court's discretion in this respect. Williams v. Commonwealth, 254 Ky. 647, 72 S. W. 2d 31.

The Commonwealth introduced Charlie Burrus as a witness. Burrus had not testified at any of the previous trials, and his name was not on the indictment. Counsel for appellant refers to him as a surprise witness, and complains because he had no opportunity to interview him before he was introduced. The Commonwealth is not limited to the introduction of witnesses whose names appear on the indictment, but it may produce any additional witnesses who may be able to furnish evidence material to the prosecution. Long v. Commonwealth, 288 Ky. 83, 155 S. W. 2d 246. In Wiley v. Commonwealth, 229 Ky. 63, 16 S. W. 2d 496, 497, it was said: "We know of no rule that prevents the introduction of witnesses by the commonwealth who did not appear before the grand jury, or whose names are not upon the indictment, although the defendant may have no knowledge or information concerning them and their evidence before they are introduced."

Burrus was an eyewitness to the shooting, but heard

none of the conversation between appellant and the deceased. His testimony was merely cumulative, and far less incriminating than the testimony of several other witnesses.

Appellant complains of the testimony of Ollie Gibson, Charlie Todd, and Tom Gravitt, Jr., in rebuttal. They testified that the deceased did not make a motion as if to draw a pistol just before he was shot. This was in rebuttal of appellant's testimony, and was competent.

Criticism of numerous rulings of the court on the admission of evidence is made, but a careful examination of the record fails to disclose prejudicial error in this respect.

The judgment is affirmed.