**Walter Allen ARCHER, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Nov. 19, 1971.

Harold Garland Wells, Hazard, Kenneth S. Baker, Jackson, for appellant.

John B. Breckinridge, Atty. Gen., Douglas E. Johnson, Sp. Asst. Atty. Gen., for appellee.

PALMORE Judge.

Walter Allen Archer was tried on two charges of murder in the fatal shooting of Lorenza Holland and Clarence "Bud" Holland, father and son. A jury found him guilty of voluntary manslaughter on each count and fixed his punishment at two 21-year terms of imprisonment. KRS 435.-020. He appeals from a judgment entered accordingly.

It is contended that the trial court erred (1) in allowing certain testimony by Brenda Holland, Bud Holland's widow, to be introduced as rebuttal evidence, and (2) in overruling Archer's motion for a new trial on the ground of newly discovered evidence. Each of these contentions requires consideration of the evidence as a whole, which we summarize as follows:

The Archer and Lorenza Holland families were next-door neighbors on Kentucky Highway 80 in Perry County. In the late afternoon of August 18, 1970, Bud Holland arrived at his father's home in an automobile and turned into the yard. According to Archer, who says he was sitting on his porch and had just finished cleaning and reloading an old pistol owned by his wife, Bud swerved his car and almost ran over Archer's wife and children as he passed their house, whereupon Archer stuck the pistol in his pocket and went over to "discuss" the incident with Bud. The discussion culminated in the fatal shooting of both Hollands by Archer.

Archer's story is that shortly after he began to remonstrate with Bud, Lorenza came from behind and struck him in the head; that Bud joined in the attack; that Lorenza picked up an ax handle and came at him with it; that he pulled his gun and it accidentally went off and shot Lorenza when Bud tried to grab it out of his hand; and that the gun accidentally went off twice more and shot Bud while he and Bud were struggling for its possession.

Lorenza was shot once in the stomach and died several days later. Bud was shot once in the chest and once in the head and died almost immediately.

Besides Archer himself, five other eye-witnesses testified, two for the Commonwealth and three for Archer.

Hattie Holland, Lorenza's widow and mother of Bud, was on the front porch of her home when Bud drove up. She says he got out of his car and was replacing some spark plugs when Archer came over and started an argument with him; Lorenza walked down the steps and told Archer to leave, but Archer refused, whereupon Lorenza shoved him and again told him to leave; Archer then pushed or knocked Lorenza to the ground, and as Lorenza started to get up Archer shot him in the stomach; Bud tried to get the pistol away from Archer, but Archer shoved him up against the car and shot him in the chest; Bud fell down and while he was in the act of trying to scoot under his car Archer kicked him and shot him in the head. Hattie testified also that neither Lorenza nor Bud had any weapon in his hands or on his person at the time of the tragedy.

Johnny James Holland, Bud's 13-year-old brother, substantially corroborated Hattie's testimony except that he said Archer began the physical part of the encounter by shoving Lorenza.

Tommy Reed, a brother-in-law of Archer, was 100 feet or so away. He heard an argument going on and saw Lorenza strike Archer, after which Archer "pulled the gun and shot him." Then Archer and Bud began scuffling over the gun and disappeared out of view around the car, following which the witness heard another shot. On cross-examination Reed testified that Lorenza had nothing in his hand or hands when he struck Archer.

Oris Lawson, another brother-in-law of Archer, lived near the scene of the killing and was sitting on his front porch when he heard a gun fire. He looked and saw Archer and Bud wrestling over the gun,

and the gun fired twice more: "When the gun went off the first time Bud went down and then he come back up and they rassled again over it, and the third shot was fired." Lawson then saw Lorenza walk out from behind the car holding his stomach, and says he did not have anything in his hand at that time.

Eugene Lawson, brother of Oris Lawson, also resided nearby, and he testified as follows:

"Well, about the first thing I noticed was they was talking * * * and then I couldn't understand what they was saying, and then Renza hit Walter with his fist in the left cheek, and it knocked Walter back, of course, and then he pulled the gun and shot Renza, and Bud grabbed him, and him and Bud started rassling over the the gun, and then they was * * * he shot again, and they come apart, and then went down behind the car." The witness said also that Bud's wife, Brenda, was present and that when Lorenza struck Archer he did so with his fist. During the entire incident he never saw anything in Lorenza's hand.

Brenda Holland, Bud's widow, did not testify in chief but was permitted to do so in rebuttal. Her testimony was confined to negating Archer's assertions that Lorenza had struck him first, that Lorenza had an ax handle, and that Archer and Bud had a struggle over the gun.

 It may be conceded without argument that it is improper for a trial court to permit evidence to be introduced in rebuttal that could and should have been introduced in chief, if it appears probable that its being put before the jury after the defense has rested will have a prejudicial effect on the defendant's case. Without reaching the question of prejudice, however, we are of the opinion that Brenda's testimony was not improper in rebuttal. While it is true that the prosecution, both in chief and on cross-examination of the defense witnesses, did in fact seek to ne-

gate Lorenza's having had any weapon, it was unnecessary for it to do so and, moreover, there was no mention of an ax handle until Archer, the defendant, took the stand and said Lorenza had attacked him with one. It is not incumbent on the prosecution to anticipate the defense of self-defense, and certainly when that issue is raised by the defendant's evidence the Commonwealth is entitled to rebut it. Cf. Curtis v. Commonwealth, Ky., 474 S.W. 2d 394 (1971).

In each of the cases cited by Archer the evidence improperly allowed in rebuttal consisted of out-of-court statements alleged to have been made by the defendant. See Lucas v. Commonwealth, 302 Ky. 512, 195 S.W.2d 90 (1946); Collier v. Commonwealth, Ky., 339 S.W.2d 167 (1960); Robinson v. Commonwealth, Ky., 459 S.W. 2d 147 (1970). In *Lucas* and *Robinson* the statements were in the nature of admissions or confessions. In *Collier* it was a threat to do the prosecuting witness in if she did not have the case dropped. Of course any out-of-court statement (or an act, such as flight, or attempt to conceal) that may reasonably be interpreted as being in the nature of an admission of guilt is admissible in chief as affirmative evidence of guilt, and should not be introduced in rebuttal under the guise of contradicting or impeaching the defendant in his capacity as a witness. But that is not the situation here. Brenda's testimony was limited to negative evidence controverting affirmative "confession and avoidance" type of exculpatory evidence produced by the defense, and was therefore competent rebuttal. See Watts v. Commonwealth, 308 Ky. 197, 213 S.W.2d 795, 798 (1948). That the prosecution chose to accomplish the rebuttal through the widow of one of the victims, who could have given other evidence in chief but was not used for that purpose, has nothing to do with its propriety.

 The principal basis for the motion for a new trial on the ground of newly discovered evidence was an affidavit by

one Arlene McIntosh with supporting affidavits by Archer and by his counsel showing why they had not discovered her as a potential witness before the trial. Though we do not question the diligence of Archer or of counsel we are not persuaded that Arlene's information is sufficient to require a new trial.

The trial was held on October 21, 1970. Arlene's affidavit was made on October 29, 1970. She says that about two weeks before the date of the affidavit she and her husband visited in the home of Hattie Holland for the purpose of collecting a coal bill, upon which occasion they entered into a conversation with Hattie about the deaths of Lorenza and Bud, and Hattie told them Lorenza had come behind Archer and struck him with an ax handle. The affiant said that on more than one occasion she had observed this ax handle at the Holland residence and had seen the children playing with it. Her affidavit further states that in the course of several conversations Brenda Holland had told her that Bud had more than once threatened to kill Archer because he thought Archer was flirting with Brenda and that Bud had whipped Brenda two or three times over Archer.

Arlene's reason for not coming forward with this information sooner was that she was afraid of the Hollands, but she has now come forward "in order that all the facts may be known."

It would be a travesty, we believe, to allow a potential witness to toy with the judicial process in the manner suggested by Arlene's affidavit. The very lameness of her explanation of why she has suddenly changed her mind about revealing her information belies its credibility. For the most part it could have no more than witness-impeaching effect anyway, and we are not persuaded of the likelihood or even substantial possibility that it would conduce to a different result upon a new trial.

The judgment is affirmed.

All concur.