822 F.2d 59
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Larry Darnell COLEMAN, Petitioner-Appellant,
v.
Mike MARTIN, Superintendent, Frankfort Career Development
Center; and David L. Armstrong, Attorney General
of Kentucky, Respondents-Appellees.
 No. 85-6074
 United States Court of Appeals, Sixth Circuit.
 July 2, 1987.
 
 W.D. Ky.
 AFFIRMED.
 On Appeal from the United States District Court for the Western District of Kentucky.
 Before WELLFORD, MILBURN and NELSON, Circuit Judges.
 PER CURIAM.
 
 
 1
 Petitioner Larry Darnell Coleman appeals the district court's judgment denying petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. Sec. 2254. For the reasons that follow, we affirm.
 
 I.
 
 2
 On July 20, 1982, a Kentucky grand jury charged that on March 10, 1982, petitioner, 'acting alone or in complicity with another, committed first-degree robbery by threatening the use of physical force upon Gary Kerrick, while armed with a gun, and in the course of committing a theft at 3130 Poplar Level Road.' The grand jury further charged petitioner with being a 'Persistent Felony Offender in the Second Degree' in light of petitioner's 1976 conviction and sentence for theft by deception.
 
 
 3
 Petitioner pled not guilty, and trial was held December 8-9, 1982. The jury returned a verdict of guilty of robbery in the first degree and sentenced petitioner to ten years' imprisonment. Thereafter, petitioner pled guilty to the persistent felony offender charge pursuant to a plea bargain. Accordingly, the trial court enhanced petitioner's sentence to twenty years. On appeal, the Kentucky Supreme Court affirmed petitioner's conviction, rejecting each of the arguments raised in the present action.
 
 II.
 
 4
 Petitioner first argues that the trial court's failure to allow impeachment of a government witness through evidence of her probationary status denied him a fair trial. During a hearing conducted outside the presence of the jury prior to her in-court testimony, Francis Groves-Woolford[1] testified that she was convicted in 1978 of trafficking in a dangerous drug (a felony), and that she was currently on inactive probation. Defense counsel argued that this evidence was admissible because the jury was entitled to know that Francis could have a motive for testifying in that her probation could be revoked. The trial court disagreed, holding that the evidence regarding Francis' probationary status would not be allowed.
 
 
 5
 In Delaware v. Van Arsdall, 106 S. Ct. 1431 (1986), the Supreme Court held that 'a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness." Id. at 1436 (quoting Davis v. Alaska, 415 U.S. 308, 318 (1974)). The Court went on to hold that a constitutional error was committed in the case at bar by the trial court's prohibition of all inquiry into the possibility that a government witness would be biased as a result of the state's dismissal of a pending public drunkenness charge because '[a] reasonable jury might have received a significantly different impression of [the witness'] credibility had . . . counsel been permitted to pursue [the matter.]' Id. at 1436.
 
 
 6
 In the present case, the State of Kentucky 'concedes that the trial court committed error by excluding testimony regarding Francis Woolford's previous felony conviction and existing probationary status.' Appellees' Brief at 8. However, the state argues the district court and the Kentucky Supreme Court correctly held the error to be harmless.
 
 
 7
 In Van Arsdall, the Court held that constitutional error resulting from the denial of the right to confrontation may be considered harmless:
 
 
 8
 The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.
 
 
 9
 106 S. Ct. at 1438.
 
 
 10
 Our consideration of the above factors convinces us that the trial court's error in foreclosing cross-examination of Francis regarding her probationary status was harmless beyond a reasonable doubt. Francis testified that on the date of the crime she was riding as a passenger in her automobile, which was being driven by her boyfriend, petitioner's accomplice, Gary Michael Woolford ('Woolford'). According to Francis, after petitioner was picked up, the three eventually stopped at the Poplar Level Road Manna Mart. Francis testified that she remained in the car while petitioner and Woolford went into the store and that she did not witness their activity within the store. Although Francis observed petitioner with a gun upon his return to the car, she did not realize that he and Woolford had committed a robbery. Francis did not recall having written in her statement to the police that she 'saw [petitioner] pull a gun out of his coat jacket and hold it on the gas station attendant.' She further denied seeing any money in the possession of petitioner or Woolford.
 
 
 11
 Because Francis testified she did not see what transpired inside the store and that she did not realize what occurred, her testimony cannot be considered overly important. The only real import to her testimony was (1) it placed petitioner at the scene of the crime and (2) it portrayed petitioner as possessing the gun after the robbery. Francis' testimony placing petitioner at the scene of the crime was cumulative in that it was corroborated by the victim's testimony, Woolford's testimony, surveillance photographs and, indeed, petitioner's own testimony. Her testimony that petitioner had the gun 'was of little consequence,' according to the Kentucky Supreme Court, 'as [petitioner] was chargeable with first degree robbery, irrespective of which participant had utilized the weapon.' Francis' testimony in this regard was in any event contradicted by that of the victim, Woolford, and petitioner.
 
 
 12
 Moreover, defense counsel was otherwise permitted wide latitude in cross-examining Francis. Defense counsel was allowed to question Francis (1) as to the fact that Francis was never charged or arrested in connection with the robbery, despite being questioned by the police on the night after the robbery; (2) as to her knowledge that she could have been charged as an accomplice; (3) as to whether the police made her a deal; (4) as to her relationship with Woolford; (5) as to whether she was intoxicated at the time of the crime; (6) as to whether she was addicted to Talwin, a controlled substance, the possession of which is a crime and a drug which is injected with a syringe; and (7) as to discrepancies between her trial testimony and statements she made to the police.
 
 
 13
 Finally, the prosecution's case against petitioner was strong. Petitioner conceded his presence at the crime, but asserted intoxication and nonparticipation as defenses. However, the victim testified that it was petitioner who emptied the cash register, and this testimony was confirmed by the surveillance photographs. Moreover, both Francis and Woolford implicated petitioner at trial and through their police statements. On this state of the record, we believe that, assuming the damaging potential of the cross-examination had been fully realized, it is clear beyond a reasonable doubt that the jury would have nonetheless returned a verdict of guilty.
 
 
 14
 Petitioner next argues that he was denied a fair trial through the introduction of his bankbook. Prior to trial, the court granted defense counsel's motion for discovery of all documents which the state intended to offer at trial. However, the state did not produce petitioner's bankbook.
 
 
 15
 At trial, petitioner testified on cross-examination that he did not leave his house on the day after the robbery. He later testified he might have been mistaken and that he could have left the house that day and deposited $100 in the bank. A bench conference ensued wherein defense counsel argued petitioner's bankbook, which showed that on March 10, 1982, $95 was deposited in petitioner's account, should not be admitted because the defense was unfairly surprised in light of the prosecution's failure to produce the book in response to the pretrial order. The trial court denied the motion and the bankbook was admitted.
 
 
 16
 Petitioner notes that although the bankbook was ostensibly introduced for impeachment purposes, petitioner never unequivocally stated that he did not go out that day. Petitioner argues that he was prejudiced because introduction of the bankbook created the inference that petitioner deposited the proceeds from the robbery, although it is common knowledge that persons other than the owner of an account can make deposits to an account. Finally, petitioner argues the evidence was inadmissible under Gilbert v. Commonwealth, 633 S.W.2d 69 (Ky. 1982), which reaffirmed the court's previous holdings that 'it is improper for a trial court to permit evidence to be introduced in rebuttal that could and should have been introduced in chief, it if [sic] appears probable that its introduction after the defense has rested will have a prejudicial effect on the defendant's case.' Id. at 70 (citing Archer v. Commonwealth, 473 S.W.2d 141, 143 (Ky. 1971)).
 
 
 17
 In our view, these arguments present nothing more than assertions that the bankbook was inadmissible under the rules of evidence. However, 'State Court rulings on the admissibility of evidence may not be questioned in a federal habeas corpus proceeding unless it raises a federal constitutional question.' Bell v. Arn, 536 F.2d 123, 125 (6th Cir. 1976); see also Pulley v. Harris, 465 U.S. 37, 41 (1984). The introduction of the bankbook, which the Kentucky Supreme Court did not find to even technically violate state law, does not raise a federal question.
 
 
 18
 Finally, in his pro se brief, petitioner argues his Sixth Amendment right to confrontation was violated by the introduction into evidence of the out-of-court statements of his accomplice. As noted earlier, Guy Woolford testified as a government witness. After Woolford testified that he held the gun and committed the robbery and that petitioner did not take any money, the trial court allowed the prosecution to impeach Woolford with his prior written statement to the police. After Woolford admitted that he made the statements contained in the exhibit (principally that it was petitioner who pulled the gun), the trial court admitted the statement over defense counsel's objection that the introduction of the statement would violate petitioner's right to cross-examination.
 
 
 19
 Petitioner restates these arguments in the present case. However, petitioner's Sixth Amendment right to confrontation was not prejudiced by the admission of the out-of-court statements of Woolford, who was present at trial and subject to cross-examination by petitioner's counsel. See California v. Green, 399 U.S. 149, 164 (1970) ('[T]he Confrontation Clause does not require excluding from evidence the prior statements of a witness who concedes making the statements, and who may be asked to defend or otherwise explain the inconsistency between his prior and his present version of the events in question, thus opening himself to full cross-examination at trial as to both stories.'). In any event, as noted earlier, whether or not petitioner held the gun was not a determinative factor in establishing his guilt, which was conclusively shown through the surveillance photographs and the victim's testimony. Under these circumstances, we agree with the district court that there are no constitutional grounds upon which habeas corpus relief can be granted regarding the admissibility of Woolford's out-of-court statement.
 
 III.
 
 20
 Accordingly, the district court's judgment is AFFIRMED.
 
 
 
 [1]
 At the time of the crime, Francis Groves-Woolford was the girlfriend of petitioner's accomplice, Guy Michael Woolford, whom she subsequently married. For the sake of simplicity, we will hereinafter refer to her as 'Francis.'