## Commonwealth v. Owens and Evans.

(Decided April 17, 1923.)

### Appeal from Ballard Circuit Court.

1. Homicide — "Involuntary Manslaughter" Defined. — "Involuntary manslaughter" is the killing of one by another in doing some unlawful act not amounting to a felony or likely to endanger human life and without intention to kill, or killing another while doing a lawful act in an unlawful manner.

2. Homicide—Accusative Portion of Indictment for Involuntary Manslaughter Held Prolix.—In an indictment for involuntary manslaughter, an accusatory part charging involuntary manslaughter by going to the home of deceased, who was seriously afflicted with heart trouble, and raising an altercation with her, held subject to criticism for prolixity; it being sufficient to charge defendants merely with the crime of involuntary manslaughter.

3. Indictment and Information—Allegation Defendants Raised a Racket or Altercation is Only a Conclusion.—In an indictment charging involuntary manslaughter of a woman known to defendants to be afflicted with heart trouble by going to her home and raising a racket and altercation with her as a result of which she died, the allegations that defendants raised a racket and altercation are simply conclusions, and are insufficient without any statement of the facts upon which the conclusion was based.

4. Indictment and Information—Bill of Particulars Cannot Aid Indictment.—The Code does not provide for bill of particulars or supplement to indictment, and the filing of such bill cannot aid indictment.

CHAS. I. DAWSON, Attorney General, THOS. B. McGREGOR, Assistant Attorney General, and FLAVIOUS B. MARTIN for appellant.

W. A. ANDERSON for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON— Affirming.

It is defectively alleged in the indictment that Mrs. Dan Browne, who was afflicted with a serious heart disease, was so terrified, agitated, excited, angered and

shocked by the threats, words and conduct of appellees, Mrs. Owens and her daughter, Mrs. Evans, that she swooned and shortly thereafter died. The indictment attempted to accuse appellees of the crime of involuntary manslaughter, but the trial court held it bad on demurrer and dismissed the prosecution; the Commonwealth appeals.

We have defined "involuntary manslaughter" as the killing of one by another, in doing some unlawful act not amounting to a felony nor likely to endanger human life and without intention to kill; and manslaughter may result when one kills another while doing a lawful act in an unlawful manner. Commonwealth v. I. C. R. R. Co., 152 Ky. 320; Maulding v. Commonwealth, 172 Ky. 371; Commonwealth v. Couch, 106 S. W. 830; 32 Rep. 638; Westrip v. Commonwealth, 123 Ky. 95.

In considering cases such as is attempted to be presented by this indictment, the author of R. C. L., vol. 13, p. 846, says:

"In the early history of the common law a homicide, to be criminal, must have resulted from corporal injury; fright, fear, nervous shock, or producing mental disturbances, it was said, could never be the basis of a prosecution for homicide. This rule appears, however, to have been gradually modified and greatly relaxed in modern times."

The same author, on page 748 of the same volume, says:

"Under the rule of the early common law, to constitute a culpable homicide, the cause of death must have been corporal, not nervous or emotional. Accordingly if a person by stimulating the imagination of another or by ill-usage, puts him in such an intense emotional state of grief, fear, or what not, that death results, the killing is not recognized by the law as a foundation of criminal responsibility, and an examination of the ancient English authorities fully corroborates and establishes this to have been the early English rule. This rule appears, however, to have been gradually modified and greatly relaxed in modern times by the English courts. In America, modern authority is divided. Some courts adhere to the early rule, whereas others have reached the conclusion that it would be unsafe, unreasonable and often unjust for a court to hold as a matter of law that under no state of fact should a prosecution for manslaughter be sustained where death appears to have been caused by fright,

fear, or terror alone, even though no hostile demonstration or overt act was directed at the person of the deceased.''

See also 29 Corpus Juris, p. 1148, etc.

The accusatory part of the indictment, which is written on a form, reads:

''The grand jurors of the county of Ballard, in the name and by the authority of the Commonwealth of Kentucky, accuse Mrs. Dick Owens and Mrs. Mittie May (Owens) Evans of involuntary manslaughter, by unlawfully going to the home of Mrs. Dan Browne, a woman seriously afflicted with heart trouble, and raising a racket, fuss and an altercation with the said Mrs. Dan Browne, and causing her to become greatly agitated and excited and from which excitment the said Mrs. Dan Browne did die therefrom, and her serious condition was known to them at the time.''

While this accusation is subject to criticism for prolixity, it perhaps is sufficient to inform the defendants of the nature of the charge for which they were being prosecuted.   It should have read:

''The grand jury of Ballard county, in the name and by the authority of the Commonwealth of Kentucky, accuse Mrs. Dick Owens and Mrs. Mittie May Owens Evans of the crime of involuntary manslaughter.''

The specifications of the indictment read:

''The said Mrs. Dick Owens and Mrs. Mittie May Owens Evans in the said county of Ballard, on the 8th day of September, 1922, and before the finding of this indictment, did unlawfully, feloniously, wilfully and wantonly go to and upon and to the home of Mrs. Dan Browne, a woman, who at the time and for more than two years before was seriously afflicted with heart trouble and whose condition at the time was known by Mrs. Dick Owens and Mrs. Mittie May Owens Evans, and there wilfully and malicously and without right and while trespassing upon the property of Dan Browne, the husband of Mrs. Dan Browne, and without the knowledge or consent, and without being invited on the property of the said Dan Browne or Mrs. Dan Browne, and while the said Mrs. Dan Browne was suffering with a serious affliction of heart trouble, raised a racket or fuss or altercation with the said Mrs. Dan Browne and caused her to become greatly excited and agitated, and from which excitement and agitation the said Mrs. Dan Browne did then

and there collapse and die within a few hours thereafter.''

On motion of counsel for appellees the Commonwealth was required to and did file a bill of particulars in which it set forth all the facts in relation to the altercation which is alleged to have brought about the death of Mrs. Browne. It is stated in brief of counsel that the trial court in sustaining the demurrer to the indictment acted upon the theory that the crime of manslaughter, whether voluntary or involuntary, cannot be committed by merely putting one in fear or by exciting, shocking or agitating one to such an extent as to cause death, even though the perpetrator be engaged in an unlawful act. Whether this be so or not the indictment was otherwise fatally defective. Some courts hold that the crime of involuntary manslaughter may be committed by wrongfully putting the victim in such fear, terror, anger or excitement as to cause death although there be no physical impact, and death be not intended, while other courts hold to the contrary. The case most like the one we have now under consideration is that of Ex Parte Edgar M. Heigho, decided by the Supreme Court of Idaho, 18 Idaho, 566, and annotated in 32 L. R. A. (N. S.) 877. The victim, an old lady, living with her son-in-law, was brought to her death by fright, agitation, or nervous shock resulting from a difficulty precipitated by the accused coming to the house where she lived and engaging in an altercation, which later resulted in a fisticuff with her son-in-law in her presence. She was not spoken to by the accused nor in any way molested, or involved in the difficulty. While it was in progress she cried out one or more times that the accused was about to kill her son-in-law or about to shoot him, the accused having a pistol; when the disturbance was quelled the old lady was found dying, although she had not received an injury except such as resulted to her from the excitement, agitation and anger occasioned by the difficulty brought on by the accused with her son-in-law, in her presence and hearing. The Supreme Court of Idaho, in considering the case on appeal, held a prosecution for manslaughter may be had where the death of a human being has been caused or accomplished through fright, fear, terror, or nervous shock produced by the accused while in the commission of an unlawful act, even though the accused made no hostile demonstration and directed no overt act at the person of the deceased. It would seem that in some instances, force or violence may

be applied to the mind or nervous system as effectually as to the body. In arriving at that conclusion the court employed the following argument:

"As to whether a death caused from fright, grief or terror, or other mental or nervous shock, can be made the basis for a criminal prosecution, has been touched upon but lightly by the text writers, and none have ventured to enunciate a modern rule on the subject; such comments and observations as the text writers have made are valuable as indicating the personal views of the writers touching this matter. Sir James Stephen, in his note to article 221 of his Digest of Criminal Law, commenting on the old rule, says: 'Suppose a man were intentionally killed by being kept awake till the nervous irritation of sleeplessness killed him, might not this be murder? Suppose a man kills a sick man, intentionally, by making a loud noise which wakes him when sleep gives him a chance of life, or suppose, knowing that a man has aneurism of the heart, his heir rushes into his room and roars in his ear, 'Your wife is dead,' intending to kill, and killing him —why are not these acts murder? They are no more 'secret things belonging to God' than the operation of arsenic. As to the fear that by admitting that such acts are murder people might be rendered liable to prosecution for breaking the hearts of their fathers or wives by bad conduct, the answer is that such an event could never be proved. A long course of conduct gradually 'breaking a man's heart' could never be the 'direct or immediate' cause of death. If it was, and it was intended to have that effect, why should it not be murder?''

In the English case of Reg. v Duval, 4 Quebec L. R. 352, there was an assault without battery, which caused such a state of agitation and weakness that death resulted within twenty minutes. Without touching the victim the accused advanced within two or three feet of the deceased in a threatening and menacing manner, with a knife in his hand, and was prevented from striking the deceased only by the intervention of a third party, and he was held guilty of murder.

In Reg. v. Towers, 12 Cox C. C. 530, it was held that an unlawful act which so frightens a person that he immediately and while under this influence takes a step or does some act which destroys his own life, the perpetrator of the unlawful act may be guilty of homicide. However, in the case of the Commonwealth of Kentucky v. Couch, 32 Ky. Law Rep. 638, 106 S. W. 830, and reported

and annotated in 16 L. R. A. (N. S.) 327, it was held that one who unlawfully fired a pistol on a public highway, thus so frightening, exciting and agitating a pregnant woman as to cause her to miscarry and to produce her death was not guilty of involuntary manslaughter, for the reason that the death of the woman was not the natural, probable result of fright. For further discussion of the subject see the cases of Cox v. People, 80 N. Y. 500; Adams v. People, 109 Ill. 444; Reg. v. Pitts Car & M. 284; Norman v. United States, 20 App. Dec. 494; State v. Shelledy, 8 Iowa 477; Hendrickson v. Commonwealth, 85 Ky. 281; State v. Preslar, 48 N. C. 421; Gipe v. State, 165 Ind. 433.

Without determining the question of whether one may be guilty of homicide in any of its degrees by the commission of some unlawful act which produces in the victim excitement, irritation, anger, terror or agitation, we are quite sure that the trial court did not err in sustaining the demurrer to the indictment under consideration. As will be observed from a reading of the specifications of the indictment, the attempted charge that the death was brought about and produced by the appellees "raising a racket or fuss or altercation with the said Mrs. Dan Browne," without setting out sufficient facts to indicate what appellees did to constitute a racket, fuss or altercation, was but the conclusion of the pleader. The bill of particulars did not aid the indictment. Our code does not provide for such a pleading, or supplement to an indictment. The indictment was, therefore, bad on demurrer without reference to whether the crime of involuntary manslaughter may be committed by putting the victim in fear, excitement, agitation, terror or nervous shock, which questions we expressly reserve.

For the reasons indicated the judgment is affirmed.

Judgment affirmed.     Whole court sitting.