## Smith v. Commonwealth.

(Decided March 22, 1929.)

O. M. WHEELER and W. A. DAUGHERTY for appellant.

J. W. CAMMACK, Attorney General, and S. H. BROWN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Reversing.

On his trial for the murder of Arthur Leslie, Mercereau Smith, was found guilty of voluntary manslaugh-

ter, and his punishment fixed at confinement in the penitentiary for 13 years. He has appealed.

This killing occurred on the night of Saturday, September 11, 1926. Smith and some others were preparing to leave Johnson county and to secure employment elsewhere. Smith seems to have had some sort of grudge against Arthur Leslie, growing out of the sale of a pistol. He seemed to want to settle this score before leaving. There had been a lot sale that day, and Smith was at the sale inquiring for Leslie. Some time after nightfall, Smith, Sid Conley, Hoss Hager, and Shug Bays got into an automobile driven by Harvey Maynard. They were apparently starting out on a wild party. They drove first to the house of one Rhoda Hitchcock, and somewhere near that point they got a half gallon of whisky. They also got a quart of whisky at or near one Fairchilds. They then came back to Van Lear Junction, and, after they had been there a while, they started out the Mayo trail. They were short of gasoline. The places where they might have obtained gasoline in Van Lear Junction were closed, and someone suggested that there was a tractor up the road, that they could get some gasoline out of it, and they started out for that purpose. On the way, they passed Arthur Leslie, whose car was parked on the roadside. They did not stop, but some of the party threw an orange at those with Leslie. They did not succeed in getting much gasoline out of the tractor, and presently returned. When they got to where Leslie's car was parked, they stopped, and some of them undertook to assist Leslie in getting his car started. He had taken the carbureter off of it and was standing in front of the car, examining the carbureter by the light of the headlights. They found that some part of it was stopped up. While Maynard and the others were endeavoring to assist Leslie in getting his car started, Smith had gone to the back of Leslie's car and found a woman sitting in it, with her face covered by a paper or something, which Smith pulled away. Thereupon she struck at him and called him a s— of a b—. This angered him, and he shook her and undertook to make her retract her statement, but she only repeated it. She got out of the car or was jerked out of the car—it is not very clear which— and ran around the car a time or two in her efforts to escape from Smith, and, according to her, he pursued her and knocked her down a time or two. She asked Leslie to protect her, but Leslie said he could do nothing

with Smith. Smith then undertook to put the woman into Maynard's car, but the members of the party who were with him protested, and, while they were arguing with Smith, the woman fled. Smith then came up to the group that was working on the carbureter and asked Leslie who that woman was, and, when Leslie answered, "I don't know," Smith said, "You are a damn liar." Leslie appealed to Smith's companions to make him let him alone, whereupon Smith said to Leslie, "You are a damn dirty bastard," and he seized Leslie and shook him. Leslie again appealed to Smith's companions to make him let him alone, whereup Smith said, "You sold me a gun and would not give it to me, and I want it." Leslie said "It is up at the house and you can go and get it now." Smith said, "I won't have it now after you have worn it out." One word brought on another and Smith undertook to strike Leslie, whereupon Sid Conley caught Smith and prevented his accomplishing his purpose. Smith freed himself from Conley and undertook again to strike Leslie, and Conley caught him again. He freed himself a second time and seized Leslie by the shirt collar and struck him one blow with his fist on the side of his neck. Leslie fell and grunted. Maynard by that time was ready to leave with his car, and all the party climbed into Maynard's car and left the scene and within a few minutes, got in another car, and left the state. In the course of an hour or so, some one passing discovered Leslie, and upon examination it was found he was dead. Physicians were summoned. They examined him and pronounced him dead, and one of them testifies that his neck was broken.

Smith sought a new trial upon nine different grounds, some of which have been abandoned. He is contending now that the court erred in instructing the jury, and we shall take up the different instructions of which he is complaining and dispose of them. Instruction 1 is:

> "If the jury believe from the evidence in this case, beyond a reasonable doubt, that in this county and before the finding of the indictment herein, the defendant herein willfully, and not in his necessary or apparently necessary self defense, struck Arthur Leslie with his fist with intent to inflict a fatal injury and under circumstances where such striking, if any, was reasonably calculated to produce a fatal injury, and that said Leslie presently died thereby, you will find the defendant guilty—guilty of willful murder

if the striking was done with malice aforethought—guilty of voluntary manslaughter if done not with malice aforethought, but in sudden affray or sudden heat or passion, and upon provocation ordinarily calculated to excite passion beyond control. If you find defendant guilty of willful murder, you will fix his punishment at death or confinement in the State Penitentiary for life, in your discretion. If you find him guilty of voluntary manslaughter, you will fix his punishment at confinement in the State Penitentiary for any period in your discretion, so it be not less than two nor more than twenty-one years."

In his attack upon this instruction, he relies upon the case of Thomas v. Com., 86 S. W. 694, 27 Ky. Law Rep. 794. In that case, Thomas was found guilty of having killed Mamie Rentz by beating and kicking her. The trial court did not give an instruction on involuntary manslaughter, and because that was not done, the judgment was reversed, but in doing so we did not say it was improper to give the usual instructions upon murder, and the reversal was rested solely on the failure of the trial court to give an instruction on involuntary manslaughter. Instead of that case being an authority for Smith, it is against him. He has cited the case of Lyon v. Com., 194 Ky. 570, 239 S. W. 1046, which was an assault and battery case. Lyon had beat up his father-in-law, but did not kill him. Of course, there was no room in that case for an instruction on murder and voluntary manslaughter, as Lyon's victim did not die. That judgment was affirmed. We have read the opinion carefully, and cannot find a line of comfort in it for Smith. The trial court in this instance gave Smith an instruction on involuntary manslaughter which is:

"If the jury believe from the evidence that defendant had reasonable grounds to believe that the striking of deceased with his fist, if he did strike him, was not reasonably calculated to produce death or that said striking, if any, was without intent on the part of defendant to produce a fatal injury, and they further believe from the evidence, beyond a reasonable doubt that the killing of deceased resulted from the striking of him by the defendant with his fist, and not in self defense of defendant, in this county and within twelve months before the finding of the indictment herein, then they should find defendant

guilty of involuntary manslaughter and fix his punishment at a fine in any sum in their discretion or confinement in the county jail for any length of time in their discretion, or both so fine and imprison him.''

Smith contends this instruction should not have been given, and he has cited a number of authorities which he contends support his position. One of these is Conner v. Com., 76 Ky. (13 Bush) 714, and that opinion, instead of supporting him, is against him. That judgment was reversed because the court had given an instruction based on what was then section 2 of article 4 of chapter 29, General Statutes, which is now section 1151, Kentucky Statutes, and which relates to unintentional killing, and the question which that case decided was that an unintentional killing as defined by section 1151, Kentucky Statutes, is a new and different crime from that of involuntary manslaughter. The case of Trimble v. Commonwealth, 78 Ky. 176, was reversed because the court in its instructions to the jury said, ''Malice is also implied by the law from any criminal and cruel act committed by one person against another, however suddenly done.'' This does not touch Smith's case anywhere. He has cited the case of York v. Com., 82 Ky. 360, but how he can find anything in that case to comfort him we are unable to imagine. Nor does the case of Westrup v. Com., 123 Ky. 95, 93 S. W. 646, 29 Ky. Law Rep. 519, 6 L. R. A. (N. S.) 685, 124 Am. St. Rep. 316, support him in any particular. We therefore conclude there is nothing in this contention.

Instruction No. 4 was the usual self-defense instruction, but was followed by a qualification making it inapplicable if Smith began the difficulty by attempting to strike the deceased, and thus made the danger to himself, etc. There was evidence that he had done this, and the greater weight of the evidence is that Leslie had done nothing to Smith until Smith attacked him, and this instruction was properly given.

His next complaint is that this prosecution was conducted by Messrs. F. B. Blair and J. L. Harrington, in the absence of the duly elected and qualified attorney for the commonwealth, and that they were employed by the relatives and friends of the deceased. We cannot add anything to what we have said in the case of Keeton v. Com., 108 S. W. 315, 32 Ky. Law Rep. 1164, relative to such a situation, but, as this case must be reversed for

another reason, it is not necessary for us to determine whether or not this was error. If upon another trial there is any reason that the commonwealth's attorney cannot act or is not present, then the court will appoint some one to represent the commonwealth as is provided by section 120 of Kentucky Statutes.

It is not worth while to discuss the misconduct he complains of in the argument of this case to the jury by the attorneys prosecuting him, as we are sure that will not occur again. The instructions he tendered and which he insists should have been given were properly refused.

The June term of the Johnson circuit court consists of 24 juridical days. It began on June 13, 1927, and ended on July 9, 1927. On June 20, 1927, the court attempted to extend this term over and beyond the August term of the Martin circuit court to and including September 10, 1927, and in that same order adjourned the court to August 15, 1927. The trial of this defendant began on August 19th and was concluded on the 20th. Because it was had at that time, and, for no other reason, this judgment must be reversed, upon the authority of Daniel v. Com., 227 Ky. 604, 13 S. W. (2d) 790.

The judgment is reversed.