## Kearns v. Commonwealth.

(Decided May 10, 1932.)

J. G. ROLLINS for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Reversing.

This homicide occurred in an unusual way. In the late evening of May 2, 1931, the appellant, Leslie Kearns, his brother, Frank, and three or four other young men were loitering in front of a confectionery in Middlesboro.

As Eugene Rosenfield, another young man, went into the restaurant, or as he came out after a few minutes in there, Leslie Kearns addressed him as a "stool pigeon," but he ignored the remark. Then Kearns called, "Hello you s—— of a b——." Rosenfield paid no attention to him, and then the appellant called to him, "Hey, you bastard, come back and fight." Rosenfield then turned about, came back, and said to him, "Why do you pick on me," or, "I don't see why there should be any trouble." Kearns repeated, "I want to fight you," and took off his coat. Rosenfield then said that, if there were going to be a fight, they had better go up an alley or closed street near by. The two boys and others then went into the alley and engaged in a fight. It appears from the evidence of the commonwealth's witnesses that, as Rosenfield was getting the best of Kearns, his brother, Frank, seized him, and then another boy grabbed Frank. There seems to have been two fights going on for a brief period. While the appellant had Rosenfield's head under his arm, another boy separated them. When Kearns loosened his hold on Rosenfield, the latter slumped down in an unconscious condition. Some of the boys upon examination found his heart beating, and all of them thought that he was simply "knocked out." Frank Kearns went for some water for the purpose of reviving him, and other aid soon reached the injured boy. There is evidence that the appellant walked out of the alley and boasted, "When we take them in the alley we come back without them." When the Rosenfield boy was taken to the hospital it was found that he was dead. He had some superficial bruises on his face and head and on his shoulder. X-ray pictures were made of the body and an examination of the plates indicated that Rosenfield had suffered a separation of the vertebræ of the neck. There was also some evidence of blood in his ears and nostrils. The blood in the ear was a symptom of serious injury within. The doctor who examined the body testified that he had died from some internal injury due to violence, and that his death was attributable either to a ruptured blood vessel or the separation in the vertebræ.

The evidence of the defendant is not materially different, except that it tends to prove that some one in the crowd of boys other than Leslie Kearns had called Rosenfield a "stool pigeon," and that he (the deceased) precipitated the fight and was the aggressor. There is also a denial that Leslie Kearns called him the epithets,

or that he made the boasting statement attributed to him. Kearns testified that Rosenfield struck him, and then in football fashion came at him with his head down and struck his shoulder against Kearn's hip, whereupon he caught him around the neck, and another boy, in endeavoring to separate them, spun them around and he loosened his hold on Rosenfield. There is some evidence tending to corroborate him.

Leslie and Frank Kearns were indicted for murder, and on their joint trial Frank was acquitted and Leslie found guilty of voluntary manslaughter and given three years in the penitentiary. Instructions on murder, voluntary manslaughter, self-defense, and defense of one another were given. It was prejudicial error not to have given an instruction on involuntary manslaughter, as the appellant contends. These boys had been on friendly terms and there had been no previous trouble between them. None of the participants in the affray was armed and no kind of weapon was brought into use. Though, according to the commonwealth's evidence, the fight was provoked by the appellant, apparently because of a degree of intoxication, and his conduct was wrong as a breach of the peace, the fight was simply what everybody calls a fair fist fight. The only evidence tending to prove malice or a willful homicide was that of the epithets, the invitation to a combat, and the fight itself. From all the evidence the jury was warranted in finding the defendant guilty of willfully and intentionally killing Rosenfield. The same facts would also justify a reasonable conclusion that the unfortunate consequences were not intended or contemplated.

To be guilty of voluntary manslaughter there must have been an intentional killing as opposed to an unintentional killing. Curtis v. Commonwealth, 169 Ky. 727, 184 S. W. 1105. The intention or purpose may be deduced from the acts of the accused, and it may be founded upon a reckless disregard for the safety of human life. Terrell v. Commonwealth, 194 Ky. 608, 240 S. W. 81; Davis v. Commonwealth, 193 Ky. 597, 237 S. W. 24, 23 A. L. R. 1551; Lucas v. Commonwealth, 231 Ky. 76, 21 S. W. (2d) 113. Where a man is engaged in doing some unlawful act not amounting to a felony or likely to endanger human life, and has no intention to kill but does kill another, it is involuntary manslaughter. Roberson's Criminal Law, sec. 394; Commonwealth v. Owens,

198 Ky. 655, 249 S. W. 792. The distinctive feature of the offense is just what the descriptive word means— done unwillingly and not from choice or with a will to do it. To justify an instruction on involuntary manslaughter, it should appear from all the acts and circumstances that the purpose to kill the person assaulted or struck or wounded was lacking. Maulding v. Commonwealth, 172 Ky. 370, 189 S. W. 251. In the application of this law it generally finds no place where deadly weapons were brought into play; the most common exception being where there was an absence of gross recklessness in their use. But it is generally applicable where there was a fight without deadly weapons. Cf. Cheatham v. Commonwealth, 228 Ky. 765, 15 S. W. (2d) 525.

In Thomas v. Commonwealth, 86 S. W. 694, 695, 27 Ky. Law Rep. 794, a death case, where the appellant had killed his paramour by brutally striking her with his fist and kicking her, it was held that an instruction on voluntary manslaughter should have been given. We quote from the opinion:

> "Undoubtedly it is true, as is insisted by the commonwealth, that murder may be committed by one kicking his victim to death, if it be done with the intent at the time to inflict fatal injury. But it is equally true that men often engage in fights and kick their opponents without intending any more than to administer a severe beating, and if, when this is the case, death results, the offense is involuntary manslaughter."

The effect of some of the language used in that opinion was modified in Maulding v. Commonwealth, supra, wherein it was held that, where the accused cruelly beat and stomped a cripple in the head and face with the heel of his shoe until he died, the intention to kill was not in doubt and the refusal to instruct on involuntary manslaughter was not error.

In Smith v. Commonwealth, 228 Ky. 710, 15 S. W. (2d) 458, the facts tending to show malice and an intention to kill were much stronger than in the instant case. A fight ensued by reason of bad feeling and the application of epithets. The men clinched and upon separation the accused struck his adversary with his fist on the side of the neck, knocking him down. He and his party left

the scene, believing, as they said, that he was simply knocked out, but when found by others it was disclosed that he was dead and that his neck was broken. The accused was convicted of voluntary manslaughter. On his appeal it was contended that the court had erred to his prejudice in giving an involuntary manslaughter instruction. The contention was denied, and the approved instruction is set forth in the opinion. While not clear in its structure, that instruction seems to cover the facts in this case, and upon another trial it should be followed in substance and principle.

Complaint is registered against the defensive instruction as being confusing. By reason of the double charge against the two accused, wherein each was charged as principal and as aider and abetter, the instructions were necessarily lengthy and somewhat involved. Since the appellant's codefendant has been found not guilty, reference to him as such will not be necessary or proper in instructing the jury upon another trial; and we have no doubt that little difficulty will be encountered in framing the instructions in a clear and sufficient form.

The judgment is reversed.