## Commonwealth v. Sullivan.

Feb. 21, 1941.

**478**

Hubert Meredith, Attorney General, and Wm. F. Neill, Assistant Attorney General, for appellant.

L. J. May for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE REES—Certifying the law.

The appellee, John Sullivan, was tried in the Pike circuit court under an indictment charging him with murder. At the conclusion of the evidence for the Commonwealth, the trial court peremptorily instructed the jury to find the defendant not guilty, and the jury returned a verdict of acquittal. Pursuant to the provisions of Sections 335 and 337 of the Criminal Code of Practice, the Commonwealth has appealed and asks for a certification of the law.

On October 21, 1939, John Sullivan and O. P. Rose

quarreled over a card game and engaged in a scuffle. There were several eyewitnesses. The proof for the Commonwealth showed that Sullivan picked up a rock weighing a pound or more and threw it at Rose, striking him on the left side of his head. Rose was drunk, and, at the time he was struck, was standing a few feet from Sullivan with his hands at his sides, and, according to some of the witnesses, was making no demonstration toward Sullivan. Rose fell unconscious, and was taken to his home in a truck. Later he was taken to a hospital in Williamson, W. Va., where he remained ten days. He continued in a semiparalyzed condition with his eyesight and hearing seriously impaired until December 17, 1939, when he was taken to a hospital in Pikeville, where he was examined by Dr. M. D. Flannery. The left side of his skull was crushed, and the bone of the skull was pressing on the brain. Dr. Flannery operated on him on December 18, 1939, and removed the bone causing the pressure. Rose remained in the hospital nineteen days. He was taken back to the hospital on February 3, 1940. He was then unconscious and paralyzed on one side, and he died six days later without regaining consciousness. Dr. Flannery testified that he was unable to say what caused Rose's death or whether or not his death resulted from the injury inflicted by appellee. On cross-examination he was asked this question and made this answer:

"Q. Doctor, is it your judgment this wound was the direct cause of his death or immediate cause? A. I don't want to go on the stand as saying it was or was not, I was trying to make that plain to you fellows that I never was able to make a diagnosis of what killed him, he came in there sick, six days unconscious and had a history of these previous injuries, been operated on and no infection and as to me saying positive it did kill him or didn't kill him I wouldn't say."

The undisputed evidence shows that Rose was a strong, healthy man prior to the injury received by him on October 21, 1939, and that thereafter he was partially paralyzed and his sight and hearing were impaired. The court rejected the testimony concerning the condition of Rose's eyesight and hearing subsequent to the injury, but improperly so since the witnesses were merely describing physical conditions apparent to any ob-

server. The services of an expert are not required to determine whether or not a man is blind or deaf. Rose's changed physical condition continued until his death, and during the interval between the date of his injury and the date of his death he made three trips to hospitals and was hospitalized in all thirty-five days. During that time he submitted to a serious operation to relieve the effects of the injury. Without any medical testimony, the evidence was sufficient to take the case to the jury on the issue as to whether or not his death was caused by the wounds inflicted by appellee. The only medical testimony introduced was neutral. While it is customary in cases of this character to introduce medical witnesses to establish the cause of death, proof thereof is not confined to that character of testimony and like other essential facts it can be proved by circumstantial evidence. There are many cases where the facts proved are such that any layman of average intelligence would know from his own knowledge and experience that the injuries were the cause of death. In such a case the requirements of the law are met without expert testimony.

"Where a cause sufficient to produce a complication resulting in death is shown, and no other cause is shown to have existed, a sufficient basis for the conclusion that the result arose from the known cause is afforded. A mere possibility that death resulted from some cause other than the act of accused will not overcome facts proved leaving no rational grounds for doubt." 30 C. J. page 287; Alder v. Commonwealth, 215 Ky. 613, 286 S. W. 696; Fitzpatrick v. Commonwealth, 210 Ky. 385, 276 S. W. 819.

At this point we deem it proper to say that the present case is not such an one as Section 337 of the Criminal Code of Practice contemplates should be appealed on behalf of the Commonwealth for the purpose of having the law certified. Only a question as to the sufficiency of the evidence is involved, and no useful service would be rendered by a determination of that issue by this court. The defendant has been acquitted, and his rights cannot be affected. It is improbable that similar facts will ever appear in any future case, and any decision rendered would be of no benefit to the parties involved, the trial court or the legal profession

generally. Section 337 of the Criminal Code of Practice provides that if any appeal on behalf of the Commonwealth is desired, the Commonwealth's attorney shall pray the appeal and have a transcript of the record prepared and transmitted to the Attorney General. Section 337 of the Criminal Code of Practice concludes:

"If the attorney-general, on inspecting the record, be satisfied that error has been committed to the prejudice of the Commonwealth, upon which it is important to the correct and uniform administration of the criminal law that the Court of Appeals should decide, he may, by lodging the transcript in the clerk's office of the Court of Appeals, within sixty days after the decision, take the appeal."

Where several persons are jointly indicted and on the separate trial of one there is a directed verdict of acquittal, an appeal by the Commonwealth is proper in order to enable it to prosecute the remaining defendants if the action of the trial court on the trial of one of the defendants is incorrect. Commonwealth v. Ramey, 279 Ky. 810, 132 S. W. (2d) 342. Likewise an appeal by the Commonwealth is proper for the purpose of correcting the decisions of the trial court in admitting and rejecting evidence, and in giving and refusing instructions where there has been a mistrial. Commonwealth v. Matthews, 89 Ky. 287, 12 S. W. 333, 334, 11 Ky. Law Rep. 505. Other instances where an appeal on behalf of the Commonwealth is proper could be pointed out, but in the present case while an error might have been committed to the prejudice of the Commonwealth it is not an error "upon which it is important, to the correct and uniform administration of the criminal law, that the court of appeals should decide." The Attorney General's Department and this Court are too burdened with important work to have their time consumed by unnecessary labors, and Commonwealth attorneys should only appeal in Commonwealth cases where a decision is important to the correct and uniform administration of the criminal law.

In the case before us, it is our opinion that the trial court erred in peremptorily instructing the jury to return a verdict of acquittal, and the law is so certified.