## Sikes v. Commonwealth.

March 28, 1947.

Joe L. Price, Judge.

431

Fisher & Reed for appellant.

Eldon S. Dummit, Attorney General, and Guy H. Herdman, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

A novel question in the law of homicide is presented; one that undoubtedly has been lurking in many cases. It concerns the appropriate instruction on self-defense as the counterpart of an instruction on involuntary manslaughter where the defendant struck the deceased with his fist to meet an assault being made upon him in the same way.

At a Fourth of July picnic in Paducah, the appellant, Elmer Sikes, under the influence of liquor, picked a quarrel and fight with William Hogan. After they had been separated, Bernice Wheatley remonstrated with Sikes for cursing in the hearing of ladies. Whereupon Sikes struck him with his fist on the jaw. Wheatley soon died from a cerebral hemorrhage caused by the blow. Sikes' companion, Mullins, had struck Wheatley just before he did. That is the evidence for the

Commonwealth. According to the defendant, Hogan had precipitated their quarrel, and Wheatley, who seems to have been a stranger to all the parties, said something Sikes did not understand and then struck at Mullins who hit him in the neck. He stepped back and came towards Sikes, "acting like he was going to strike me." He struck Wheatley in the body in defense of himself. Rebuttal evidence was that Wheatley made no attack on either Sikes or Mullins, and that Sikes had struck a hard blow after Mullins had hit Wheatley.

Approved instructions on murder, voluntary manslaughter and involuntary manslaughter were given. Smith v. Com., 228 Ky. 710, 15 S. W. 2d 458; Instructions to Juries, Stanley, Sec. 876. The defendant was found guilty of voluntary manslaughter and his punishment fixed at four years' imprisonment in the penitentiary.

The instruction on self-defense was that the jury should acquit the defendant if they found that when he struck the deceased, if he did so, "he believed and had reasonable grounds to believe that he was then and there in danger of death or the infliction of some great bodily harm at the hands of Wheatley and that it was necessary, or believed by the defendant in the exercise of a reasonable judgment, to be necessary to strike the deceased in order to avert that danger, real or to the defendant apparent." This follows the conventional pattern. The point is made that the defendant, of course, did not have reasonable grounds to believe that he was in imminent danger of either death or great bodily harm at the hands of Wheatley when he was attempting to strike him only with his fist; that he had the right to stand his ground and repel the force of Wheatley's attack with such force as seemed reasonably necessary to protect himself from any injury, whether it would be trivial or serious, that he believed or could reasonably apprehend might result. It is submitted that he was entitled to have the jury so instructed.

Man-made law is not blind to human nature; at least self preservation. So one is not held accountable for taking the life of another in resistance of an attack which from its nature creates a reasonable apprehension of imminent danger of losing one's own life or of

suffering great bodily harm. Naturally, lesser correlative degrees of attack and defense receive the same sanction of the law. Generally speaking, the reciprocal standard or measure of force and violence is the same. It is essential that the defensive act not be excessive or disproportionate to the force involved in the attack. But the person under attack is not required to measure the force necessary to protect himself "with as much exactness as an apothecary would drugs on his scales." The measure is what in the exercise of a reasonable judgment under the circumstances is required to avert the danger. That is all the law demands. Carroll v. Commonwealth, 83 S. W. 552, 26 Ky. Law Rep. 1083; Commonwealth v. Beverly, 237 Ky. 35, 34 S. W. 2d 941; Warren on Homicide, Sec. 149. This rule is exemplified by the familiar instruction on self-defense.

When the court informs the jury as to the range and measure of their power, he instructs them in substance that if they believe beyond a reasonable doubt that the accused slew another person intentionally and with premeditation, they should find him guilty of murder and direct that his own life be forfeited or his liberty be taken away so long as he shall live. If they find that he killed the other person intentionally, but did so under a sudden impulse and without premeditation, they should find him guilty of voluntary manslaughter and direct his imprisonment for any time between two and twenty-one years. But always where there is a rational basis for it the court must give a reciprocal or countervailing instruction that the jury should not find him guilty if they reach the conclusion that the defendant believed and had reasonable grounds to believe that he, himself, was then in danger of being killed or of suffering great bodily harm. The phrase "great bodily harm" has been used as the criterion from the earliest period of the law. Short v. Commonwealth, 4 S. W. 810, 9 Ky. Law Rep. 255. This eliminates fear of trivial or minor injury as a defense. It is to say in effect that when a person is confronted with an apparently fatal situation, he may use the same degree of force and violence as his assailant. If he does that and no more in preventing the victim from committing a felony on him, he is excused from the legal effect of what otherwise would be a felony committed by himself. But no per-

son has the right to kill another for violence directed at himself that is or seems to be less than a felony. He has no right to kill in order to prevent a mere trespass on his body or a simple assault—a misdemeanor—for it is not accompanied by any imminent peril to his own life. If he does use more force than is required, reasonably and apparently, or commit what would otherwise be a more serious offense, he is not entitled to be excused. Warren on Homicide, Sec. 149; Allen v. United States, 164 U. S. 492, 17 S. Ct. 154, 41 L. Ed. 528.

In this state involuntary manslaughter continues to be dealt with as a common law misdemeanor, punishable by fine or imprisonment in jail, or both, without limit. The offense embraces the killing of another person in doing some unlawful act not amounting to a felony nor of a character of itself likely to endanger life, without malice or an intention to kill, and also the killing of another while doing a lawful act in an unlawful manner. Conner v. Commonwealth, 76 Ky. 714. The vital difference between voluntary and involuntary manslaughter is in the state of mind. In one case intention and impulsion to kill are present. In the other, intent is absent and the impulse to do the act may or may not be sudden.

In this case the instruction on involuntary manslaughter was required, for the jury could believe beyond a reasonable doubt that the defendant committed the misdemeanor in striking the deceased with his fist without any intention of killing him. Ordinarily a blow with a fist does not imply an intent to kill, for that result is not probable. Thomas v. Commonwealth, 86 S. W. 694, 27 Ky. Law Rep. 794; Smith v. Commonwealth, 228 Ky. 710, 15 S. W. 2d 458; Kearns v. Commonwealth, 243 Ky. 745, 49 S. W. 2d 1009; Sanders v. Commonwealth, 265 Ky. 671, 97 S. W. 2d 584; Cook v. Commonwealth, 285 Ky. 749, 149 S. W. 2d 507; Bailey v. Commonwealth, 288 Ky. 613, 157 S. W. 2d 100; Payne v. Commonwealth, 289 Ky. 590, 159 S. W. 2d 430; Rush v. Commonwealth, 296 Ky. 724, 178 S. W. 2d 408; Annotations, 15 A. L. R. 675, 24 A. L. R. 666. That instruction properly predicated the finding of guilt upon the belief beyond a reasonable doubt that Wheatley's death resulted from the defendant having struck him with his fist when the defendant had reasonable grounds to believe that the striking was not reasonably calculated to produce his

death or that the striking was without an intention to produce a fatal injury. Stanley's Instructions to Juries, sec. 876. The defendant claimed he struck Wheatley because he was coming upon him "acting like he was going to strike me." Whatever he might have done to Sikes would have been with his fist for he was not armed. The defendant had reason not to be in fear of his life or of great bodily harm at the hands of his assailant, and, therefore, may have measured his actions accordingly. Under his claim, our fundamental rules permitted Sikes to stand his ground. It is traditional Kentucky law that a man does not have to act the coward and run, or "retreat to the wall," as under the common law rule. Connor v. Commonwealth, 118 Ky. 497, 81 S. W. 259; Gibson v. Commonwealth, 237 Ky. 33, 34 S. W. 2d 936, quoting Mr. Justice Harlan in Beard v. United States, 158 U. S. 550, 15 S. Ct. 962, 39 L. Ed. 1086; 26 Am. Jur., Homicide, Secs. 150, 151. The defendant could lawfully meet force with force to the degree—but only to the degree—that it honestly seemed to him to be reasonably necessary to protect himself from a mere trespass or assault upon his body. Lawson v. Commonwealth, 224 Ky. 443, 6 S. W. 2d 488; Gooslin v. Commonwealth, 283 Ky. 665, 142 S. W. 2d 989. Following our reasoning above, it may be said here that the defendant could meet the misdemeanor which he believed was about to be committed upon him by committing a misdemeanor upon his assailant.

The court, following the usual practice in the past, gave no reciprocal instruction on self-defense in this relation to the effect that the defendant may have been justified in striking the deceased without an intent to inflict a fatal injury upon him. We would appear naive or wilful to ignore reality and assert that this defense was covered by the given self-defense instruction, which predicated any or all rights of the defendant upon the reasonable belief that he was in danger of death or great bodily harm at the hands of Wheatley. If the defendant was justified in meeting an unlawful attack by striking the decedent with his fist with such force and in such manner as "was not reasonably calculated to produce his death," or struck "without intent to produce a fatal injury" (the language of the involuntary manslaughter instruction), and because he was but meeting

force with force to repel an attack, he could not be held responsible for the resulting fortuitous death. Where blows are delivered in self-defense they do not constitute unlawful acts and no conviction of involuntary manslaughter can be justified. 40 C. J. S., Homicide, sec. 58; People v. Hunter, 365 Ill. 618, 7 N. E. 2d 444. In such a case, the defense was purposely made but the killing was not purposely done. It is axiomatic that an accused is entitled to have his defense submitted to the jury. The call for a special instruction submitting that defense is as certain as the demand for the counterpart of the murder and voluntary manslaughter instruction. This is not upon the postulate of justifying the homicide, for that was not intended (under the defendant's claim), but of justifying the striking of the blow, which was intended in resistance to a simple assault.

On the authority of Weston v. State, 167 Ind. 324, 78 N. E. 1014, it is laid down in Warren on Homicide, Sec. 158:

"Where a homicide was committed by the use of the fist alone, without a weapon, the defendant's right to justify the act as having been committed in self-defense is not confined to a situation so grave that the danger to be averted was great bodily injury or the loss of life."

In the case cited (which is the only one we have been able to find directly in point), the defendant claimed that his assailant threatened "to knock his head off," and came toward him and the defendant struck him with his fist. In falling he struck his head on the sidewalk and death resulted. Among many instructions or charges to the jury, there was one that the defendant could justify his attack upon the deceased "only on the theory that at the time he, the defendant, was in imminent danger of great bodily harm or in imminent danger of losing his life at the hands of the deceased." It will be seen that this is substantially the self-defense instruction that was given in the case at bar. The court held the instruction was erroneous in the "particular of confining the right of self-defense to a situation so grave that the danger to be averted was the loss of life or serious bodily harm." Said the court:

"It must be remembered that appellant only made use of his fist. To justify such a method of defense, it

is not required that the danger, real or apparent, should be as great as where resort is had to the use of a deadly weapon. If the deceased committed an assault upon appellant, in such a manner as to bring him into imminent danger of any injury, or to cause such an appearance of danger as to lead him reasonably to believe that it existed, he was not bound to stand until he received the blow, and, in putting the doctrine of self-defense before the jury, the right of appellant to strike a blow should not have been circumscribed to a situation in which he was in danger of death or serious bodily injury.''

The same may be said in this case. It is an essential part of the law of simple assault and battery. But the offense itself cannot be regarded as a degree of homicide, for when death results it is merged into the graver crime. Wilson v. Commonwealth, 243 Ky. 333, 48 S. W. 2d 453. An instruction on involuntary manslaughter covers the question of guilt where but for the attributable death the accused would be guilty of a simple assault without an offensive or deadly weapon.

We have come to the conclusion that where the defendant admits striking the deceased with his hand or fist and there is evidence that his assailant was not attempting to use a weapon which is conclusively presumed to be deadly, as a pistol, or an inoffensive instrument which may be deadly only in the manner in which it is used, as a small stick or club, and the evidence adverse to the defendant requires an instruction on involuntary manslaughter—in short, circumstances like those at bar—a reciprocal instruction on self-defense should be given. The instruction may be patterned after those approved in simple assault and battery cases. It is in substance and effect that if the jury should believe that the defendant believed and had reasonable grounds to believe that he was then and there about to be assaulted, or was in danger of bodily harm about to be inflicted upon him by the deceased, and the defendant used no more force than was necessary or appeared to him in the exercise of a reasonable judgment to be necessary to repel such assault, or to protect himself from injury at the hands of the deceased, he should be found not guilty. However, the circumstances in the present case would require that such self-defense instruction be

qualified by providing that if the jury should believe beyond a reasonable doubt that the defendant was the aggressor or brought on the difficulty by first assaulting the deceased, he should not be acquitted under the instruction. See Instructions to Juries, Stanley, Secs. 73 and 806; Crowe v. Commonwealth, 91 S. W. 663, 29 Ky. L. R. 12; Pollard v. Vandivir, 233 Ky. 563, 26 S. W. 2d 495; Renfro v. Barlow, 131 Ky. 312, 115 S. W. 225. The evidence in some cases may require the qualification based on a voluntary mutual combat. See Harris v. Commonwealth, 140 Ky. 41, 130 S. W. 801; Toler v. Commonwealth, 295 Ky. 105, 173 S. W. 2d 822.

We may borrow again from the opinion of the Indiana court, Weston v. State, supra, in saying:

"It was most important to appellant, in view of the unapprehended consequence of the striking of the blow, that the precise quality of his act should have been presented to the jury under clear instructions as to the right of self-defense."

Wherefore the judgment is reversed.