Cord WHITE, Jr., Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

March 16, 1962.

Rehearing Denied Oct. 12, 1962.

Marcus Mann, Slayersville, for appellant.

John B. Breckinridge, Atty. Gen., John B. Browning, Asst. Atty. Gen., for appellee.

CULLEN, Commissioner.

Cord White, Jr., was convicted of voluntary manslaughter and given a 10-year sentence. On appeal to this Court the conviction was reversed because of errors in the

instructions. White v. Commonwealth, Ky., 333 S.W.2d 521. Upon a second trial White was again convicted and a sentence of 21 years' imprisonment was imposed. The present appeal is from the judgment on the second trial.

On the first appeal this Court held that the evidence was insufficient to warrant a finding of *malice* and therefore an instruction on *murder* was not authorized. However, with some misgivings, the Court held that the evidence was sufficient to support an inference of *intent to kill,* such as would authorize an instruction on *voluntary manslaughter.* We are constrained now to reconsider the question of the sufficiency of the evidence (which was substantially the same on the second trial as on the first trial) to support a finding of intent to kill.

We shall set forth the circumstances of the killing as stated by the Commonwealth's witnesses.

Some seven or eight persons, including the defendant and Graden Jett, the victim, had been engaged for a couple of hours in social conversation and moonshine drinking at a spot on a narrow mountain road. Around a half-gallon of moonshine was consumed. A dispute arose between the defendant's brother and one Ernest Turner, after Turner had driven the brother's car down the mountain and had been gone what the brother considered an unnecessarily long time. The brother and Turner started to scuffle and fell to the ground locked in combat. Graden Jett arose from a seated position on the roadbank and gave indications of an intent to enter the struggle. The defendant warned him to stay out of the fight, as it was not his concern. Jett said, "I will do what I want to do." The defendant then struck him a fist blow in the face, knocking him down. The defendant then struck Junior Watkins, who had ventured to join the affray, and knocked him down. The defendant next returned to Jett, who was on the ground, and struck him two or three times in the face. In the meantime

the struggle between Turner and the defendant's brother had been terminated, and the defendant and Turner engaged in a wrestling scuffle for a few moments. Watkins then left the scene to get a gun and the defendant did likewise. The defendant got back to the scene first and when Watkins appeared the defendant fired a couple of shots but they did no harm. The defendant's stepfather relieved the defendant of his gun and also prevailed upon Watkins to surrender his gun. Such of the participants as had not already departed the scene then went their respective ways, leaving Jett either lying or sitting on the roadbank. No one was aware that he had suffered a fatal injury; everyone assumed that he had "passed out" mainly from the effects of the moonshine. A short time later, when Jett's wife and some friends came to carry him home, they found he was dead.

Two lay witnesses who examined the body testified that Jett's neck was broken. One of these, the coroner, who was a licensed embalmer, also testified that there were bruises on Jett's face that would have been sufficient to cause death. However, Jett's wife and another witness who viewed the body said only that there were two bruises on the face, one around the mouth and the other on a cheek. (The coroner said that both eyes were swollen shut and there were numerous bruises on the face.)

The question is whether the foregoing evidence is sufficient to warrant a finding of an intent to kill, as is necessary to sustain a conviction of voluntary manslaughter.

The view accepted in most jurisdictions is that the mere fact that death ensues from a blow with the hand or fist does not of itself permit an inference of an intent to kill. However, the nature of the attending circumstances, such as the use of excessive violence or brutality or the taking of undue advantage of a weak, helpless or unsuspecting person, may give rise to an inference of the intent to kill. Annotation, 22 A.L.R.2d 854.

There is some inconsistency reflected in our Kentucky cases on the question. However, in most of the cases where an instruction on murder or voluntary manslaughter was held authorized there was some evidence other than the mere fact of death from a blow of the fist to raise an inference of an intent to kill. In Thomas v. Commonwealth, 120 Ky. 428, 86 S.W. 969, the defendant, after having threatened to kill the woman he was living with, knocked her down with his fist and then kicked her several times in the stomach, side and face. In Maulding v. Commonwealth, 172 Ky. 370, 189 S.W. 251, the defendant, after knocking the victim down with his fist, stamped him repeatedly in the head and face with the heel of his shoe. In Sanders v. Commonwealth, 265 Ky. 671, 97 S.W.2d 584, where the defendant struck the victim with his fist in a casual quarrel, the Commonwealth's evidence was to the effect that the defendant had used brass knucks, whereas the defendant maintained he had used only his bare fist; the court said that if the evidence for the defendant were to be believed "it presents only a case of involuntary manslaughter." Similarly, in Cook v. Commonwealth, 285 Ky. 749, 149 S.W.2d 507, where the Commonwealth's proof was that the defendant had struck the victim with a blackjack and the defendant's proof was that he merely used his fist, the court said that if the defendant's evidence were to be believed he was guilty only of involuntary manslaughter. In Boggs v. Commonwealth, 285 Ky. 558, 148 S.W.2d 703, there was testimony that the defendant had admitted an express intent to kill the victim. In Rush v. Commonwealth, 296 Ky. 724, 178 S.W.2d 408, the evidence showed "a most brutal killing," and the nature of the wounds indicated that they must have been inflicted by the use of metal knucks or a club.

■ A few of our cases seem to have taken the view that the mere striking of a fatal blow with the fist will support an inference of an intent to kill. In Smith v. Commonwealth, 228 Ky. 710, 15 S.W.2d 458, the giving of instructions on both murder and voluntary manslaughter was approved where the only indication of an intent to kill, apart from the striking of a single fist blow, was that the defendant was in a belligerent mood and had provoked a fight with the victim. In Kearns v. Commonwealth, 243 Ky. 745, 49 S.W.2d 1009, instructions on murder and voluntary manslaughter again were approved where the defendant had sworn at the victim and had invited him to fight, and where during the fight the defendant not only had struck several blows but had put the victim's head in an armhold. On the first appeal of the instant case this Court overruled the Smith and Kearns cases to the extent they held that *malice* could be inferred from a sudden, simple fistfight. White v. Commonwealth, Ky., 333 S.W.2d 521. It is our holding now that they should be, and are, overruled as authority for the proposition that *intent to kill* can be inferred from a sudden, simple fistfight.

In somewhat the same category as the Smith and Kearns cases are Bailey v. Commonwealth, 288 Ky. 613, 157 S.W.2d 100, Payne v. Commonwealth, 289 Ky. 590, 159 S.W.2d 430, and Sikes v. Commonwealth, 304 Ky. 429, 200 S.W.2d 956. The opinion in the Bailey case is somewhat ambiguous but it seems to approve the raising of an inference of intent to kill from the mere striking of a single blow with the fist. The same is true of the Payne case, although there was some evidence in that case that the defendant had kicked the victim after knocking him down. In the Sikes case the Court said, "Ordinarily a blow with a fist does not imply an intent to kill, for that result is not probable." Nevertheless the Court impliedly approved the giving of a voluntary manslaughter instruction where the evidence showed only that the defendant had struck the victim one time in the jaw with his fist, in the course of a sudden quarrel. To the extent that the Bailey, Payne and Sikes cases stand for the same proposition on which the Smith and Kearns cases have been overruled, they also are overruled.

We consider the question now of whether there is any probative evidence in the instant case, apart from the striking of the initial blow with the fist, to warrant an inference of an intent to kill.

Putting aside for the moment the testimony concerning the bruises on the victim's face, we find nothing in the circumstances of the case that would be indicative of an intent to kill. There is no evidence of any belligerence, animosity or threats by the defendant before the fight began. There is no suggestion that Jett was any more drunk than the defendant, or was helpless or taken by surprise. The defendant did not take undue physical advantage of Jett because the latter was a much bigger and heavier man than the defendant. While the witness Junior Watkins testified that after the defendant had hit Jett the first time, and then knocked Watkins down, he hit Jett two or three more times, Watkins did not say that Jett was helpless or incapacitated at the time the later blows were struck. The fact that the defendant fought with both Junior Watkins and Ernest Turner, and apparently prevailed over both of them, but did not inflict any serious injury on either of them, negatives any general homicidal intent on the part of the defendant. Also negativing such intent is the fact that later in the encounter, when the defendant had armed himself with a gun, he made no attempt to kill anyone with it. Another significant thing is that no one in the crowd had any idea, before they all left the scene, that Jett had sustained a fatal injury. This indicates that none of them considered the blows they saw struck as of a death-dealing quality.

The fact that the defendant hit Jett two or three additional times, after the first blow, would not of itself raise an inference of an intent to kill unless the combined blows were of such a brutal and violent nature as might be calculated to cause death. This brings us to the evidence concerning the bruises. The description of the bruises by two of the witnesses does not indicate that the bruises were of such a nature as to have been caused by excessive violence or brutality. The coroner testified, however (over objection), that the bruises were sufficient to have produced death. His description of the bruises was that both of the victim's eyes were blue and swollen shut and there were bruises "all over his face."

In our opinion the testimony of the coroner that the bruises were sufficient to have caused death does not have probative value. The established rule is that the cause of a death may be proved only by medical testimony, except where the facts proved are such that any layman of average intelligence would know from his own knowledge and experience that the injuries described are sufficient to produce death. Commonwealth v. Sullivan, 285 Ky. 477, 148 S.W.2d 343; Witt v. Commonwealth, 305 Ky. 31, 202 S.W.2d 612; Harvey v. Commonwealth, Ky., 318 S.W.2d 868.

In Witt v. Commonwealth, 305 Ky. 31, 202 S.W.2d 612, several defendants were convicted of voluntary manslaughter by reason of the fact that one of their companions on a drinking spree had died after having been assaulted by them (the defendants were seen to hit the victim several times). The conviction was reversed on the ground that the evidence did not prove that the death was caused by the assault. The injuries shown in that case were a markedly swollen and bruised right upper lip; bruises on the right side of the nose, cheek and upper lid of the right eye; a moderate hemorrhage and torn sclera in the right eye; and a small hemorrhage in and small lateral bruise near the left eye. The court said (202 S.W.2d 615): "None of the wounds described in the evidence appeared at a place calculated to produce death, except through the medium of an internal hemorrhage; and the meager expert evidence indicates that no internal hemorrhage occurred. There was no evidence of a fracture, * * *." The court further said (202 S.W.2d 616): "* * * but

mere superficial bruises to the face or superficial rents in the skin or to the outside covering (sclera) of the eye seldom, if ever, produce death, and this also is (a matter) of common knowledge."

■ The injuries to the face of the victim in the instant case, even as described by the coroner, were no more severe than those in the Witt case. As stated in the Witt case, in common knowledge and experience such injuries do not ordinarily cause death. Therefore, the testimony of the coroner that the injuries to the face could have caused death was not competent. We think it follows, then, that his testimony describing the wounds was not sufficient to raise an inference of an intent to kill.

■ It is our conclusion that the evidence in the instant case was not sufficient to support a conviction of voluntary manslaughter. We appreciate that this is contrary to our holding on the first appeal of this case, but we consider that the law of the case rule has sufficient flexibility to permit us to admit and correct our error, particularly where substantial injustice might otherwise result. See Union Light, Heat & Power Co. v. Blackwell's Adm'r, Ky., 291 S.W.2d 539.

There remains for our consideration a question that is not significant to the disposition of this appeal but may be of importance upon a new trial.

The Commonwealth undertook to prove that a short time after all of the participants had left the scene of the affray, and the defendant with his companions was at the home of his stepfather, the defendant said, "We ought to go back and kill Ernest (Turner) and Junior (Watkins)." The court sustained objections to this evidence. The Commonwealth contended that the evidence was relevant as bearing on the defendant's frame of mind and as showing the existence of an intent to kill. The question is important because if this evidence were held to be admissible upon

another trial, to show intent, it would supply the proof of intent to kill necessary to sustain a conviction of voluntary manslaughter.

■ The general rule, as stated in 40 C.J.S. Homicide § 211, p. 1120, is that subsequent hostile declarations of the accused are admissible on the issue of malice and state of mind, where relevant to such conditions as of the time of the offense, but should be excluded where such relevancy does not appear.

Wigmore points out that evidence of subsequent emotion "can enter only as evidential of its existence at the time in issue," and that there is opportunity for error in admitting such evidence because the subsequent existing emotion may have been first produced since the time in issue. Wigmore on Evidence, Third Ed., Vol. II, sec. 395, p. 349.

■■ In order for the evidence of the subsequent hostile declaration against Turner and Watkins to be admissible it must have been reasonably interpretable as showing the existence of an intent of the defendant to kill Jett at the time he struck Jett. It must be remembered that after that time the defendant engaged in battle with Turner and Watkins, and both the defendant and Watkins left the scene and returned with guns which they flourished at each other. We think that the hostile declaration was not reasonably calculated to indicate anything more than that the defendant had eventually reached a homicidal frame of mind toward Turner and Watkins; or possibly it might indicate that, having learned that Jett was dead, the defendant *now* considered it advisable to kill Turner and Watkins. Only in a most remote way could the declaration be considered to show a pre-existing intent to kill Jett, particularly in view of the fact, hereinbefore pointed out, that there was nothing in the conduct of the defendant at the time he struck Jet to justify an inference that he then had an intent to kill Jett. In our opinion the testimony con-

cerning the hostile declaration was not properly admissible in evidence.

The judgment is reversed, with directions that if upon another trial the evidence is substantially the same, the court shall not instruct on any greater offense of homicide than involuntary manslaughter.

MONTGOMERY, Judge (dissenting).

I cannot agree to that part of the majority opinion holding that the evidence in this case is insufficient to justify an inference of intent to kill and to sustain the conviction of voluntary manslaughter. The holding in the majority opinion violates the fundamental principle of criminal law that one who does a willful act which causes another great bodily harm from which death follows is presumed to intend the natural and probable consequences of such act and must stand legally responsible for it.

To constitute what the law deems to be a crime, there must be a combination of an overt wrongful act and a wrongful intent. The guilty intent is not necessarily that of intending the very act or thing done and prohibited by common or statute law, but it must at least be the intention to do something wrong.

It is a fundamental rule of criminal law that every sane person, capable of committing crime, is presumed to contemplate and intend the necessary, natural, and probable consequences of his own voluntary acts, even if the harm is done to one other than the one intended. The presumption that the accused intends the natural and probable consequences of his own act is not one of law to be applied by the court but of fact to be weighed by the jury. The intent must be proved and this may be done either by direct or indirect evidence tending to establish the fact, or it may be inferred from the circumstances of the case and the conduct of the accused at the time of and subsequent to the commission of the act. Where an intent exists to do wrong and an illegal act is committed, the doer of the act may be criminally liable though the result is other than he anticipated or intended. Roberson's New Kentucky Criminal Law and Procedure, 2nd Edition, Sections 17 and 18, and cases cited therein.

Thus, the striking of Graden Jett by appellant with his fist, once while standing and then two or three times while down, is an overt act which indicates an intention to do bodily harm. The circumstances of the drunken free-for-all fight are indicative of ill will. Certainly under this evidence the question of fact should have been submitted to the jury to determine whether or not there was a sufficient inference to justify the intent to kill, as well as the question of whether or not death under such circumstances was the natural and probable consequence of the act.

For these reasons, I feel that the evidence was sufficient to submit the case to the jury for its determination of whether the appellant was guilty of voluntary manslaughter.